WILLIAM G. MONTGOMERY
MARICOPA COUNTY ATTORNEY

By:    M. COLLEEN CONNOR (Bar No. 015679)
        connorc@mcao.maricopa.gov
        TALIA J. OFFORD (Bar No. 028768)
        offordt@mcao.maricopa.gov
        Deputy County Attorneys
        MCAO Firm No. 00032000

CIVIL SERVICES DIVISION
222 North Central Avenue, Suite 1100
Phoenix, Arizona 85004
Telephone: (602) 506-8541
Facsimile (602) 506-8567
ca-civilmailbox@mcao.maricopa.gov
*Attorneys for Maricopa County Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| David Isabel, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>Michele Reagan, in her individual capacity; Maricopa County; Adrian Fontes, in his official capacity as Maricopa County Recorder,<br><br>        Defendants. | No. 2:18-cv-03217-DWL<br><br>**MARICOPA COUNTY'S 12(b)(1) MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>(Honorable Dominic W. Lanza) |

Defendants Maricopa County, and Adrian Fontes, in his official capacity as Maricopa County Recorder (collectively, "Maricopa County"), through undersigned counsel, respectfully move this Court for an order dismissing Plaintiff's Complaint filed October 9, 2018 (**Doc. #1**) in the above-captioned matter for lack of subject matter

jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and Local Rule 12.1 (b) of the Local Rules of Civil Procedure. Maricopa County's motion is supported by the accompanying Memorandum of Points and Authorities and the Court's entire file in this matter.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I. INTRODUCTION

Indeed, the right to vote is precious and fundamental in a free and democratic society. While precious and fundamental, the right to vote is not unfettered. Plaintiff has undone subject matter jurisdiction by engaging in unreasonable delay in bringing this lawsuit and failing to exhaust administrative remedies, among others. Accordingly, Maricopa County files this Motion seeking dismissal as a matter of law of Plaintiff's Complaint in its entirety, with prejudice.

### II. BACKGROUND

The circumstances leading to this action have already been presented to the Court in detail by way of Plaintiff's Complaint, Defendant Secretary's Motion to Transfer, and the 2016 lawsuit, *Arizona Democratic Party and Democratic National Committee vs Reagan*, CV-16-03618-PH-SPL (D. Ariz. Nov. 3, 2016) (Doc #1) (hereinafter "2016 Lawsuit") concerning the exact same operative facts as here. Accordingly, the background presented here will be brief.

On October 19, 2016, Spencer Scharff, counsel of record for Plaintiff David Isabel and others, sued the Arizona Secretary of State ("Secretary") for injunctive and declaratory relief surrounding the same operative facts as alleged here. (*Id*. at 3-4.) Mr.

Scharff verified the complaint in the 2016 Lawsuit and acted as a fact witness. (*Id.* at 12.) Mr. Scharff, as verifier of the complaint, alleged *all* voters who applied on October 11, 2018 were "severly burdened" by the Secretary's refusal to extend the voter registration deadline. (*Id*. at ¶ 39.)

On November 3, 2016, the Honorable Steven Logan issued an order denying all substantive relief. *Ariz. Democratic Party v. Michele Reagan*, No. CV-16-03618-PHX-SPL (D. Ariz. Nov. 3, 2016) (Doc. # 39) at 34 (hereinafter "2016 Order"). Specifically, the Secretary's refusal to extend the deadline for Columbus Day did not violate Arizona Law. *Id*. at 18. While it may have violated the National Voting Rights Act ("NVRA"), the October 10, 2016 deadline and the Secretary's decision not to extend it, did not disenfranchise voters and "imposed only a de minimus burden on constitutional rights." (*Id.*) (citations omitted). Judge Logan further denied plaintiffs' relief because they unreasonably delayed in filing suit. (*Id*. at 33-34.) Plaintiffs did not appeal Judge Logan's ruling.

In 2017, because of the 2016 Lawsuit, the Arizona Legislature codified the procedure for setting voter registration deadlines when the deadlines fell on weekends or holidays. During the First Regular Session of the Fifty-Third Legislature, by way of Senate Bill 1307, the Arizona Legislature amended A.R.S. § 16-120 to add section B stating: "[i]f the twenty-ninth day preceding the date of the election falls on a Saturday, Sunday or other legal holiday, voter registrations that are received on the next business day immediately following the Saturday, Sunday or other legal holiday are deemed to have been timely received for purposes of voting in that election."

Coming now before this same court is Mr. Scharff. This time, in the capacity as counsel, but regarding the same nucleus of operative facts as presented in the 2016 Lawsuit. Indeed, Plaintiff Isabel's case was contemplated in the 2016 Lawsuit, as he by his own allegation was one of the electors who submitted his voter registration application on October 11, 2016, as alleged in the 2016 Lawsuit. Prior to filing this lawsuit, however, Plaintiff did not lodge a complaint through the Secretary's formal complaint process and Plaintiff did not provide pre-suit notice to Maricopa County or the Secretary.

## III.  LEGAL STANDARD FOR REVIEW

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, dismissal is mandatory when the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583–84 (1999). Subject matter jurisdiction delimits federal court power and is nonwaivable. *Id*. at 583. The Court has an independent obligation to determine whether it has subject matter jurisdiction. *Id.*

## ARGUMENT

## IV.  PLAINTIFF'S ALLEGATIONS ARE BEYOND THE COURT'S SUBJECT MATTER JURISDICTION

### A.  Plaintiff Lacks Article III Standing.

Under Rule 12(b)(1), a court lacks subject matter jurisdiction when a plaintiff lacks standing. *Planned Parenthood Arizona, Inc. v. Brnovich*, 172 F. Supp. 3d 1075, 1084 (D. Ariz. 2016) (internal citations and quotations omitted) ("Article III federal courts are limited to deciding cases and controversies. Article III standing is among one of the components that enforces the case-or-controversy requirement."). Whether a party

has standing is a question of law reviewed de novo for the Court to decide. *Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002).

The United States Supreme Court has established three "irreducible standing requirements" for establishing standing: (1) "injury in fact"—an invasion of a legally protected interest which is concrete and particularized"; (2) a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court."; and, (3) it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561. The procedure for dismissal for lack of standing is a Rule 12(b)(1) motion to dismiss for lack of standing. *Steffan v. Cheney, 733 F. Supp. 115, 116 (D.D.C. 1989)* ("Motion to dismiss for lack of standing can only be brought as, and must be evaluated as, motion to dismiss for lack of subject matter jurisdiction."). Applying the three irreducible Article III standing requirements to this case establishes Plaintiff has no standing to bring this lawsuit.

### i. Injury in Fact

Plaintiff alleges his injury is that his vote did not count and it should have. Maricopa County takes this allegation as true for this Motion to Dismiss. *Accord Rhodes v. Robinson*, 408 F.3d 559, 563 (9th Cir 2005) (in considering a motion to dismiss for failure to state a claim, all factual allegations of the complaint are presumed true and all reasonable inferences are made in favor of the non-moving party).

                *ii.*    *Plaintiff's alleged injury is not traceable to Maricopa County's conduct.*

Plaintiff cannot meet this element because his alleged injury is not traceable to Maricopa County. Judge Logan addressed this issue in the 2016 Lawsuit, which concerned the same nucleus of operative facts. While Maricopa County is the entity that tallied the ballots in the 2016 General Election, Maricopa County did not set the voter registration deadline. (2016 Order at 10-13.) Judge Logan ruled: "the Secretary made the determination concerning the voter registration deadline, and the counties deferred to that determination." (*Id*. at 13.) Judge Logan further opined: "[t]he Secretary has the authority to promulgate rules and procedures for elections, such as voter registration, *which encompasses determining voter registration deadlines*…Any person who does not abide by the Secretary's rules is subject to criminal penalties." (2016 Order at 9-10.) Further, according to Judge Logan, Plaintiff's own actions contributed to his alleged injury:

> *The holiday deadline did not limit the methods of voter registration*; it merely imposed a timeframe in which voters had to act in order to register to vote in the general election. Nor did the deadline impose restrictions in a disproportionate manner because only certain methods for voter registration were available on Columbus Day…The voters at issue here could have registered in time for the general election, but unfortunately did not do so…these circumstances, while unfortunate, were not the result of the Secretary's holiday deadline. Circumstances like these could arise at any time an individual registers to vote at the last moment to do so.*

(2016 Order at 16-17) (emphasis added.) Plaintiff has not pled additional facts on point that were not present in the 2016 Lawsuit. In accordance with Judge Logan's 2016 Order,

6

Plaintiff's alleged injury is not traceable to Maricopa County.

>   *iii.   There is no favorable decision that could redress Plaintiff's alleged injury.*

There is no court decision that can remedy Plaintiff's alleged injury. In other words, there is no court decision that can require Defendants to retroactively count Plaintiff's ballot cast in the 2016 general election. There is no court action that can change the results of the 2016 general election. If Plaintiff had filed this suit immediately upon discovering his vote would not be counted, a different result might be reached. Now, almost two years later – and with another national election completed – no favorable decision from any court could redress Plaintiff's injury – that his vote did not count and should have.

Of note, the closest remedy available to redress prospective injuries like the one Plaintiff complains of is legislation. Indeed, in 2016, Maricopa County followed the Secretary and the Secretary followed the law, which did not account for holidays. In 2017, the Arizona Legislature changed the law, requiring voter registration deadlines be extended to account for weekends and holidays. Therefore now, as of the time of this lawsuit, the voter registration deadline would be extended according to law.

Accordingly, Plaintiff's inability to meet all three irreducible standing requirements is grounds for dismissal of this lawsuit. Maricopa County respectfully requests the Court dismiss this case in its entirety for lack of Article III standing.

**B.   2017 Arizona Legislation and Laches Render Plaintiff's Claims Moot.**

The jurisdiction of the federal courts only extends to live cases and controversies.

*See* U.S. Const. art. III, § 2. Indeed, "[i]t has long been settled that a federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992) (internal quotations omitted). Thus, if an occurrence subsequently makes a case moot, the court cannot hear it. Here, Plaintiff's claims are moot for two reasons: 1) 2017 Arizona Legislation; and, 2) the Doctrine of Laches.

*i. 2017 Arizona Legislation renders Plaintiff's Count I moot.*

In 2017, the Arizona Legislature passed Senate Bill 1307, which is promulgated at A.R.S. § 16-120. A.R.S. 16-120 (B) codifies the procedure for setting voter registration deadlines that fall on a weekend or holiday. Since the legislature has spoken, there is no court decision that would provide any effectual relief to Plaintiff not already in existence. Count I is therefore moot.

*ii.     The Doctrine of Laches Render Plaintiff's Complaint moot.*

All of Plaintiff's claims are barred by the equitable doctrine of laches. Laches prevents a party who "with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001) (internal quotations omitted). According to the Supreme Court of Arizona, laches applies to election matters, even if a challenge is timely filed under the applicable deadline. *Harris v. Purcell*, 193 Ariz. 409, 412 (1998) (finding, even though plaintiff met the applicable deadline, plaintiff's claim was barred by laches because plaintiff engaged in unreasonable delay); *see also Lubin v. Thomas*, 144 P.3d 510, 511 (2006) ("In the context

of election matters, the laches doctrine seeks to prevent dilatory conduct and will bar a claim if a party's unreasonable delay prejudices the opposing party or the administration of justice.").

A lawsuit is barred by laches when two elements are met: (1) unreasonable delay of the party bringing the lawsuit; and, (2) prejudice to the party asserting the laches defense because of the delay. *See Arizona Minority Coal. for Fair Redistricting v. Arizona Indep. Redistricting Comm'n*, 366 F. Supp. 2d 887, 908 (D. Ariz. 2005). If the elements of a laches defense are met, a court may dismiss an entire case, dismiss certain claims, or restrict the damages available to the plaintiff. *See, e.g.*, *Derek & Constance Lee Corp. v. Kim Seng Co.*, 467 Fed. Appx. 696, 697–98 (9th Cir. 2012) (affirming denial of request for contempt order as barred by laches)." Both of these elements are met here for all claims.

### 1. *Plaintiff delayed in filing this lawsuit and the delay was unreasonable.*

While Plaintiff appears to have met the general two-year statute of limitations, this is an election lawsuit, and Plaintiff's delay in that regard is unreasonable. *Accord Purcell*, 193 Ariz. at 412 (finding the doctrine of laches applies to election matters, even if a challenge is timely filed under the applicable deadline.). Unreasonable delay is a two-step analysis: "[f]irst, [the Court] assess[es] the length of the delay, which is measured from the time the plaintiff knew or should have known about its potential cause of action…. Second, [the Court] decide[s] whether the plaintiff's delay was reasonable." *Arizona Minority Coal. for Fair Redistricting v. Arizona Indep. Redistricting Comm'n*, 366 F.

9

Supp. 2d 887, 908 (D. Ariz. 2005) (internal quotations and citations omitted); *Purcell*, 193 Ariz. at 412 (holding the laches determination includes whether the delay was unreasonable). The Court will also consider whether a legitimate excuse for delay exists. *Id.*

Here, the length of the delay, which is measured from the time Plaintiff knew or should have known about his potential cause of action, was approximately two years. Per A.R.S. § 16-584(E), "[f]or any person who votes a provisional ballot, the county recorder or other officer in charge of elections shall provide for a method of notifying the provisional ballot voter at no cost to the voter whether the voter's ballot was verified and counted and, if not counted, the reason for not counting the ballot." A.R.S. § 16-584(E). Maricopa County must notify provisional voters within ten days of the general election for a federal office (and within five days for other offices). *See* A.R.S. § 16-584 (E) ("The verification shall be made by the county recorder within ten calendar days after a general election that includes an election for a federal office and within five business days following any other election."). Thus, in 2016, Plaintiff would have known whether his vote counted on or near *November 18, 2016*. In other words, Plaintiff slept on his rights for approximately two years.

Second, Plaintiff's delay was unreasonable and no legitimate excuse exists for this two-year delay. Persons bringing election lawsuits have an "affirmative duty to bring their challenges as early as practicable." *Mathieu v. Mahoney*, 174 Ariz. 456, 459-60 (1993) (finding unreasonable delay where plaintiffs filed suit more than a year after knowing of the alleged injury). Indeed, Judge Logan also found "unreasonable" delay in

1 the 2016 Lawsuit where plaintiffs waited "more than a week after the voter registration
2 deadline had passed" to file suit. (2016 Order at 31.) In finding so, Judge Logan reasoned
3 plaintiffs' "eleventh-hour conduct preclude[d] the relief they [sought]." (*Id*.)

4 Here, Plaintiff does not explain why he did not file a complaint in November 2016
5 when he became aware his vote did not count. He does not explain why he did not file a
6 complaint with the Secretary of State. He does not explain why he did not provide pre-
7 suit notice to Defendants. This lack of explanation is evidence of unreasonable delay.
8 *Mathieu*, 174 Ariz. at 460 ("No persuasive explanation has been offered for delaying the
9 initiation of this action until a few days before the deadline for ballot printing. The delay
10 is unreasonable on its face.").

11              *2. Maricopa County is Prejudiced by Plaintiff's delay.*

12 The Ninth Circuit has recognized two types of prejudice in the laches context:
13 evidentiary-based prejudice and expectations-based [prejudice]. *Arizona Minority Coal.*
14 *for Fair Redistricting v. Arizona Indep. Redistricting Comm'n*, 366 F. Supp. 2d 887, 908
15 (D. Ariz. 2005). Evidentiary-based prejudice includes "such things as lost, stale, or
16 degraded evidence, or witnesses whose memories have faded or who have died." *Id*.
17 Expectations-based prejudice is established by showing the party "took actions or
18 suffered consequences that it would not have, had the plaintiff brought suit promptly." *Id*.
19 (citations and quotations omitted).

20 Here, Maricopa County suffered both types of prejudice because of Plaintiff's
21 delay in bringing this lawsuit. Regarding evidentiary-based prejudice, any witnesses who
22 may have had relevant knowledge on the allegations have suffered time-induced memory

11

lapse. Indeed, to find a witness who might remember Plaintiff's specific case – especially while in the throes of processing another national federal election – is highly prejudicial to Maricopa County. While Plaintiff had almost two years' notice and opportunity to prepare his lawsuit against Maricopa County, Maricopa County had no notice that this lawsuit was forthcoming. Thus, has had no wherewithal to assess, preserve, or otherwise retain any information that might be relevant to Plaintiff's 2016 claims.

Regarding expectations-based prejudice, Maricopa County might have indeed taken actions that it might not have, had the plaintiff brought suit promptly. As the Arizona Supreme court stated: "[t]he ultimate prejudice in election cases is to the quality of decision making in questions of great public importance. In ordinary private litigation, the laches defense requires a court to focus on the prejudice to the parties. But public litigation, such as election contests and challenges to ballot propositions, implicates interests well beyond the parties to the case." *Mathieu*, 174 Ariz. at 460. Judge Logan's 2016 Order sums up the issue at bar: by waiting to file this Complaint after the applicable deadline, Plaintiff has frustrated the very purpose of this lawsuit – which is the same as in the 2016 lawsuit – to ensure his vote counted in the 2016 General Election. (2016 Order at 31-32.) In other words, had Plaintiff sued in November 2016 when he knew or should have known of his alleged injury, or, had Plaintiff exhausted his administrative remedies, Defendants would have had the opportunity to assess whether his vote should have counted.

Accordingly, Maricopa County respectfully requests dismissal of Plaintiff's Complaint as laches bars it.

### C. Count I Against Maricopa County Is Improper Because Recorders are not Empowered to Establish Statewide Voter Registration Deadlines.

Notwithstanding the mootness of Plaintiff's Count I, the Recorder has no power over allegations in this claim. Namely, to set the voter registration deadline. Under the National Voter Registration Act, the chief election officer sets the voter registration deadline. The chief election officer in Arizona is the Arizona Secretary of State. Notably, Judge Logan spent significant time on this point in his 2016 Order:

> The Secretary is Arizona's chief election officer who is responsible for overseeing and administering elections in Arizona. The Secretary has the authority to promulgate rules and procedures for elections, such as voter registration, which encompasses determining voter registration deadlines … Any person who does not abide by the Secretary's rules is subject to criminal penalties.

(2016 Order at 9-10)(internal quotations and citations omitted.) Indeed, while this point is now moot for the reasons set forth, *supra* Section III.B, the Secretary sets the voter registration deadline – not Maricopa County.

### D. Count I is Barred for Failure to Provide Notice of this Lawsuit to the Secretary as Required under the NVRA.

Under the NVRA, a person who is aggrieved by file a lawsuit in federal court. 52 U.S.C. § 20510(b). However, pre-suit notice to the chief election official of the State (i.e. Secretary of State) is required. 52 U.S.C. § 20510(b)(1). When the violation upon which a suit is based occurs a substantial time before the next federal election, the aggrieved person must notify the state of the alleged violation and must then wait 90 days before filing suit. *Id.* § 20510(b)(1)-(2). However, "if the violation occurred within 120 days" of

a federal election, the aggrieved person must wait only 20 days after notifying the state before bringing suit. *Id*. § 20510(b)(2). "If the violation occurred within 30 days" of a federal election, the aggrieved person does not need to give any notice before bringing suit. *Id*. § 20510(b)(3). *National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1035 (9th Cir. 2015).

Here, Plaintiff's lawsuit is barred for failure to provide the requisite notice. The alleged violation occurred almost *two years ago*. Accordingly, Plaintiff was required to provide notice then wait 90 days before filing suit. Yet, Plaintiff did not provide pre-suit notice.

**E.    Count II is Barred for Failure to Exhaust Administrative Remedies Under the Help America Vote Act ("HAVA").**

Plaintiff is not entitled to relief in this Court because he lacks standing for failing to exhaust his administrative remedies under HAVA. HAVA requires funded states to "establish and maintain State-based administrative complaint procedures" that meet prescribed requirements and that allow any person to file a complaint alleging a violation of HAVA. 52 U.S.C. § 21112 (a)(1)-(2) (formerly cited as 42 U.S.C. § 15481 *et seq.*). Since Arizona receives HAVA funds, the HAVA complaint procedures apply.

Accordingly, the Arizona Secretary of State has established the State of Arizona Grievance Process, which is a statewide complaint system whereby a person may file a complaint who believes "there has been a violation, a violation is occurring, or a violation will be occurring related to any provision of Title III of HAVA." (2014 Elections Procedures Manual, at 384, attached as **Exhibit 1** (hereinafter "2014 Manual")). A

complaint may be filed "up to, but no more than, 60 days following the occurrence of the alleged violation of [HAVA]." *Id.* HAVA establishes and regulates minimum election administration standards, including, but not limited to, provisional voting procedures, statewide voter registration databases, voter identification procedures, and administrative complaint procedures. *See* 52 U.S.C. § 10101 *et seq.*, *generally*; *accord* Help America Vote Website, www.eac.gov/about/help-america-vote-act. The Secretary of State "shall" hold a hearing on the complaint within ten to sixty days of the filing of the complaint and issue a final determination within ninety days of the filing of the complaint. (2014 Manual, at 384-85.) If the Secretary fails to meet the final determination deadline, the complaint shall be resolved under the alternative dispute resolution procedures established in the 2014 Manual. (*Id.* at 385.)

Here, Plaintiff did not file a complaint under the State of Arizona Grievance Process prior to filing his lawsuit. Plaintiff's claim that his vote was not counted and should have been became ripe in November 2016 when he knew or should have known his vote did not count. Plaintiff should have filed a complaint then – but he did not.

Plaintiff did not provide any notice to Maricopa County that he would be filing a complaint alleging injuries, including punitive damages, regarding the October 10, 2016 voter registration deadline and alleged violations of the NVRA. Plaintiff's failure to exhaust administrative his remedy by way of filing a complaint with the State of Arizona Grievance Process renders this lawsuit and his proposed punitive damages claim wholly improper. Accordingly, Maricopa County respectfully requests the Court dismiss this case in its entirety for Plaintiff's failure to exhaust his administrative remedies.

## V. PUNITIVE DAMAGES ARE WHOLLY INAPPROPRIATE

The 2014 Manual prescribes the appropriate remedies for a complaint brought pursuant to the State of Arizona Grievance Process: "*No remedy* may involve the awarding of compensatory or punitive monetary damages to a complainant or a finding that an election official is subject to civil penalties." (2014 Manual, at 386.) Indeed, the Manual prescribes: "[a]n appropriate remedy may include, but is not limited to any or all of the following: a. a plan for rectifying the particular violation; b. an order requiring that additional training will be provided to election officials so as to ensure compliance with Title III and the Arizona Revised Statutes, Title 16; and c. an order requiring additional voter education." (2014 Manual, at 386.)

While Plaintiff did not bring his complaint pursuant to the Secretary's established grievance process, he should have. For this reason and the reasons, *supra*, establishing a lack of subject matter jurisdiction, punitive damages are wholly inappropriate and should not be awarded.

## VI. CONCLUSION

Accordingly, because the Court lacks subject matter jurisdiction over the allegations in Plaintiff's Complaint, Maricopa County respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety, or alternatively, dismiss those individual claims that fail to set forth a proper cause of action against any Defendant.

. . .

. . .

. . .

**RESPECTFULLY SUBMITTED** this 27th day of November, 2018.

>WILLIAM G. MONTGOMERY
>MARICOPA COUNTY ATTORNEY
>
>
>By: /s/ Talia J. Offord
>TALIA J. OFFORD
>M. COLLEEN CONNOR
>Deputy County Attorneys
>*Attorneys for Maricopa County Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27<u>th</u> day of November, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Spencer G. Scharff, Esq.
SCHARFF, P.L.C.
502 West Roosevelt Street
Phoenix, Arizona  85003
spencer@scharffplc.com

Nathan J. Fidel, Esq.
MILLER, PITT, FELDMAN &
  MCANALLY, P.L.C.
2800 North Central Avenue, Suite 840
Phoenix, Arizona  85004-1069
nfidel@mpfmlaw.com

*Attorneys for Plaintiff*

| | |
|---|---|
| Stephanie Susan Elliott | Kara Karlson |
| OFFICE OF THE ATTORNEY GENERAL | OFFICE OF THE ATTORNEY GENERAL |
| 2005 North Central Avenue | 2005 North Central Avenue |
| Phoenix, Arizona  85004-1592 | Phoenix, AZ 85004-1592 |
| Stephanie.Elliott@azag.gov | AdminLaw@azag.gov |
| | |
| Jeremy Dominic Horn | Joseph Eugene LaRue |
| OFFICE OF THE ATTORNEY GENERAL | OFFICE OF THE ATTORNEY GENERAL |
| 2005 North Central Avenue | 2005 North  Central Avenue |
| Phoenix, Arizona  85004-1592 | Phoenix, Arizona  85004-1592 |
| jeremy.horn@azag.gov | AdminLaw@azag.gov |

*Attorneys for Defendant Michele Reagan*

/s/ Tyna M. Garcia

S:\CIVIL\CIV\Matters\GN\2018\Isabel V. Reagan  GN18-0633\D-MC MTD 112718.Docx