Mark Brnovich
Attorney General
Firm Bar No. 14000

Stephanie Elliott (030872)
Jeremy Horn (024707)
Joseph E. La Rue (031348)
Kara M. Karlson (029407)
Assistant Attorneys General
2005 N. Central Avenue
Phoenix, AZ  85007
Telephone (602) 542-5025
Facsimile (602) 542-4385
stephanie.elliott@azag.gov
jeremy.horn@azag.gov
joseph.larue@azag.gov
kara.karlson@azag.gov
AdminLaw@azag.gov

*Attorneys for Defendant Michele Reagan,
Arizona Secretary of State*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| David Isabel, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Michele Reagan, in her individual capacity; Maricopa County; Adrian Fontes, in his official capacity as Maricopa County Recorder,<br><br>Defendants. | Case No: 2:18-cv-03217-DWL<br><br>**DEFENDANT MICHELE REAGAN'S MOTION TO DISMISS**<br><br>**(Oral Argument Requested)** |

Defendant Michele Reagan moves this Court to dismiss Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim upon which relief may be granted.

**PRELIMINARY STATEMENT**

This case is about whether registration deadlines can disenfranchise voters. They cannot and, therefore, Plaintiff's lawsuit fails to state a claim.

Plaintiff could not vote in the 2016 General Election because he did not register by the deadline, Monday, October 10, 2016. The Secretary of State's Office widely published the deadline to inform and remind voters to register timely, especially since the deadline fell on Columbus Day. Throughout the registration period, voters could register in multiple ways: in-person, online, and by mail. But, for an unknown reason, Plaintiff delayed his registration until the day following the deadline—making him ineligible to vote in the 2016 General Election.

The instant case is not the first time that an Arizona District Court has heard a challenge to the October 10 deadline. It was previously litigated and decided in 2016 in a case brought against Defendant Reagan by the Arizona Democratic Party and Democratic National Committee (the "2016 Litigation"). In that case, the Court held that although the deadline should have been set on October 11, to account for the holiday, the Court could not order a change in deadline because the plaintiffs had delayed in filing suit, and their delay prevented the Court from providing meaningful relief. Therefore, the deadline to register for the 2016 General Election remained on October 10, 2016.

In a repackaged Complaint, which is nearly identical to the 2016 Complaint, Plaintiff seeks monetary damages for the same types of claims that were made by the Arizona Democratic Party and rejected by this Court two years ago. Plaintiff claims that he cast a provisional ballot that was ultimately not counted, and so he was disenfranchised, in violation of federal laws and the U.S. Constitution. Plaintiff ignores that his provisional ballot was not counted due to his failure to timely register. Nevertheless, being ineligible to vote in a particular election does not, without more, constitute disenfranchisement. Plaintiff could not vote because he did not register in time, not because Defendant Reagan denied him the opportunity to vote or somehow

1 barred him from the polls. In fact, Plaintiff had the same opportunity to vote as every
2 other voter in Arizona, including those voters that registered timely, by October 10. The
3 interplay between the deadline and an individual's choice and responsibility to meet that
4 deadline has led to rulings by this Court, the Ninth Circuit Court of Appeals, and the
5 United States Supreme Court that voter registration deadlines do not disenfranchise
6 anyone. Despite clear precedent, Plaintiff alleges just that and asks this Court to award
7 him compensatory and punitive damages.

8 Plaintiff's claims fail for three interrelated reasons: (1) as to the First Cause of
9 Action, the National Voter Registration Act ("NVRA") precludes compensatory
10 damages for violations and, therefore, they cannot be obtained via 42 U.S.C § 1983, (2)
11 as to the Second Cause of Action, because Plaintiff was ineligible to vote under state
12 law, the Help America Vote Act ("HAVA") does not apply, and (3) as to all causes of
13 action, voter registration deadlines do not disenfranchise voters. Put simply—Plaintiff's
14 failure to register in a timely manner prevented him from voting in the 2016 General
15 Election, not the voter registration deadline or Defendant Reagan. As a matter of law,
16 Plaintiff has no remedy for the NVRA claim under § 1983, has no remedy under HAVA,
17 and was not disenfranchised by the deadline. Thus, he fails to state a claim upon which
18 relief may be granted.

19 **I.   BACKGROUND**
20     **A.   Arizona Election Law.**
21 Since at least 1980, Arizona law has provided that the deadline to register to vote
22 in the next election is the twenty-ninth day before that election. A.R.S. § 16-120. In
23 accordance with Arizona Law, the registration deadline for the 2016 General Election
24 was set for Monday, October 10, 2016, which also fell on Columbus Day.[1] (Compl. ¶
25 16.) There are multiple ways to register to vote including in-person at county recorder

---

[1] In 2017, that law was amended to clarify that when the twenty-ninth day before the election is a Saturday, Sunday, or other legal holiday, registrations may be submitted on the next business day. 2017 Ariz. Sess. Laws Ch. 262, § 1 (amending A.R.S. § 16-120).

3

offices, A.R.S. § 16-134, in-person through designated public assistance agencies, A.R.S. §§ 16-134, -140, in-person at the Motor Vehicle Division ("MVD") office, A.R.S. § 16-112, by mail, A.R.S. 16-134, or online through the Service Arizona website, www.servicearizona.com. The MVD, one of the places a person could register, was closed on Columbus Day, as well as the two previous days, Saturday and Sunday. (Compl. ¶ 18.) Accordingly, individuals who preferred to register in person at the MVD had to register by Friday, October 7, due to the weekend and holiday closures. October 7 was the thirty-second day before the election. Notably, registration was available by mail through Saturday, October 8,[2] at most county recorder offices through Monday, October 10, and online generally through Monday, October 10. *Ariz. Democratic Party v. Reagan*, No. CV-16-03618, 2016 WL 6523427, at * 2 (D. Ariz. Nov. 3, 2016).

Despite the various options which would have enabled him to timely register to vote in the 2016 General Election, Plaintiff arrived at the MVD and registered to vote on October 11, one day after the deadline had passed. (Compl. ¶ 8.) Plaintiff was deemed ineligible to vote and accordingly his provisional ballot was not counted in the 2016 General Election. (Compl. ¶ 37.)

**B.     The 2016 Litigation.**

In the 2016 Litigation, the Arizona Democratic Party and the Democratic National Committee sued Defendant Reagan for declaratory and injunctive relief, asserting that the October 10 deadline violated the NVRA, the First and Fourteenth Amendments, and Arizona law. *Reagan*, 2016 WL 6523427, at * 3. The First and Fourteenth Amendment claims centered on constitutional voting rights while the NVRA and state-law claims were narrower in scope. *See id.* at * 7-17. NVRA requires that states permit voter registration via the MVD until at least thirty days before a federal election. 52 U.S.C. § 20507(a)(1). Arizona law requires that voters be registered to vote before midnight of the twenty-ninth day preceding the date of the election. A.R.S. § 16-120. The plaintiffs

---

[2] The post office was closed on Columbus Day and the preceding Sunday.

4

pressed these claims on behalf of 2,069 voters who they asserted registered to vote on October 11. *Reagan*, 2016 WL 6523427, at * 3, 3 n.5.  The plaintiffs' ultimate argument in the 2016 Litigation is identical to Plaintiff's argument here—that the voter registration deadline denied citizens their constitutional right to vote.  In its thoughtful decision in the 2016 Litigation, this Court denied the plaintiffs' request for relief and concluded as follows:

(1) Although the registration deadline violated the requirement of the NVRA, plaintiffs waited too long to bring their lawsuit and so no relief was available, including an injunction that would have allowed those who registered on October 11 to vote in the 2016 General Election.  *Id*. at 14, 16-18.

(2) Plaintiffs' constitutional claim failed because any burden on their right to vote was de minimis.  *Id*. at 10.

(3) The Secretary "erred in her application" of a confusing state statutory scheme when she determined that voter registration must end on Columbus Day.  *Id*. at 15.  But as with the NVRA claim, plaintiffs brought their lawsuit too late for the Court to award any injunctive relief, and any burden on their right to vote was de minimis.  *Id*. at 16-18.

(4) The Secretary's decision not to extend the voter registration deadline to October 11 was reasonable and "served (and serves) the State's important interests in the orderly, accurate, and reliable administration of elections."  *Id*. at 10.

Now, two years later, the Court is presented with the exact same facts and the exact same argument distinguished only by the relief sought.[3]

---

[3] Although Plaintiff was not a party to the 2016 Litigation, the suits are not entirely separate.  Plaintiff's lead counsel, Spencer Scharff, was involved in the 2016 Litigation as the Voter Protection Director for the Arizona Democratic Party.  *Reagan*, 2016 WL 6523427, at * 2, 4.  Mr. Scharff was heavily involved and provided testimony in the mini-trial on the merits.  *Id*.

## II. ARGUMENT

### A. Standard of Review.

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is the appropriate remedy if the complaint either lacks a cognizable legal theory or lacks sufficient facts to support a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). A complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim cannot be supported with mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, the right to relief must be raised above mere speculation. *DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 763 (9th Cir. 2018). At its core, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

### B. NVRA Precludes Compensatory Damages.

NVRA, now designated as 52 U.S.C. §§ 20501-20511, imposes on states certain requirements related to voter registration. Although NVRA provides a private right of action, Plaintiff seeks to enforce it via 42 U.S.C. § 1983. Section 1983 broadly provides a remedy for violations of federal statutes. *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980). However, the remedy is just that—a remedy. Section 1983 does not confer any individual rights; it merely provides a mechanism for enforcement of individual rights found in the U.S. Constitution and federal statutes. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). Accordingly, the Supreme Court has "reject[ed] the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983." *Id.* at 283.

As a further limit on the reach of § 1983 to vindicate federal statutory rights, case law "teaches that when Congress creates a right by enacting a statute but at the same time limits enforcement of that right through a specific remedial scheme that is narrower

6

than § 1983 , a § 1983 remedy is precluded." *Stilwell v. City of Williams*, 831 F.3d 1234, 1244 (9th Cir. 2016); *see also Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 15 (1981) ("[T]he existence of these express remedies demonstrates . . . that [Congress] intended to supplant any remedy that otherwise would be available under § 1983."). "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19-20 (1979). That would directly apply to a statute, such as NVRA, which outlines a specific remedial scheme providing only declaratory and injunctive relief to aggrieved parties.

NVRA was signed into law in 1993 and came into effect in 1995. The purposes of NVRA are:

> (1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office; (2) to make it possible for Federal, State, and local governments to implement this Act in a manner that enhances the participation of eligible citizens as voters in elections for Federal office; (3) to protect the integrity of the electoral process; and (4) to ensure that accurate and current voter registration rolls are maintained.

52 U.S.C. § 20501(b).

To secure its enforcement, NVRA provides a private right of action in 52 U.S.C. § 20510(b). This section states that a person who is aggrieved by a NVRA violation may provide written notice of the violation to the State's chief election official, in this case the Arizona Secretary of State.[4] 52 U.S.C. § 20510(b). Under 52 U.S.C. § 20510(b)(2), the State has a certain time period to correct the violation, after which the aggrieved

---

[4] Written notice is not required if the violation occurs within 30 days before a federal election. 52 U.S.C. § 20510(b).

7

person "… may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation."[5] Absent from the statute is any vehicle for retrospective claims, compensatory, or punitive damages for any adjudged violation.

In creating a private right of action within NVRA, Congress arguably created an "enforceable right." However, Congress also spoke through its designation of a specific process and remedy to address violations. The purpose of NVRA was to boost voter registration and turnout. 52 U.S.C. § 20501(b). Thus, Congress provided for remedies that would specifically advance that purpose—declaratory and injunctive relief. Moreover, Congress provided a detailed mechanism for aggrieved parties to obtain that relief with notice requirements which are geared towards permitting the State to cure any violation prior to the election. 52 U.S.C. § 20510(b)(2). This is the obvious remedy as it functions to preserve a wrongfully aggrieved party's opportunity to vote. *See id.*

Congressional intent need not be an exercise solely in speculation. In this case, the legislative history of NVRA provides insight into the intent of Congress in passing the statute with the designated private right of action. The Committee on House Administration commented on concerns regarding monetary damages:

> The Committee has heard concerns that this section authorizes the award of monetary damages. It does not. Corrective action in the form of declaratory and injunctive relief, plus reasonable attorney fees are the available civil remedies.

H.R. Rep. No. 103-9, at 20 (1993). The Senate Committee on Rules and Administration held similar discussions:

> It should be noted that this section does not authorize the award of monetary damages. Rather, the civil remedies that are authorized are corrective action in the form of declaratory and injunctive relief, plus reasonable attorney fees.

---

[5] If the violation occurs within 120 days before a federal election, the State has 20 days to cure the violation before the aggrieved party may file a civil suit. If the violation occurs more than 120 days before a federal election, the State has 90 days to cure the violation before the aggrieved party may file a civil suit. 52 U.S.C. § 20510(b).

8

S. Rep. No. 103-6, at 36-37 (1993).

"In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate." *Middlesex Cty. Sewerage Auth.*, 453 U.S. at 15. Indeed, Congress did so when it passed NVRA. According to the plain language of the statute and the corresponding legislative history, the available remedies do not include compensatory and punitive damages either in an action directly under the statue or through § 1983.[6]

There is no legal basis to support Plaintiff's attempt to use NVRA via § 1983 as a mechanism to either address retroactive violations or award compensatory and punitive damages for such violations. Therefore, Plaintiff's First Cause of Action fails to state a claim and must be dismissed.

**C.  HAVA is Inapplicable Because Plaintiff was Not Eligible to Vote Under State Law.**

Plaintiff alleges a violation of 52 U.S.C. § 21082(a)(4) which states that a provisional ballot shall be counted *if the voter is eligible under state law to vote*. Plaintiff was not eligible under state law to vote in the 2016 General Election because he failed to timely register. Therefore, he fails to state a claim for relief under HAVA.[7]

While Congress has imposed certain statutory requirements including those contained in NVRA and HAVA, States retain the responsibility and authority to regulate elections. *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 568-69 (6th

---

[6] Upon information and belief, there are no known cases in which compensatory or punitive damages were sought or awarded for a violation of NVRA, either under the statutory private right of action or through 42 U.S.C. § 1983. This lack of previous application since NVRA went into effect in 1995 parallels this interpretation of Congress's intent.

[7] For purposes of this Motion only, Defendant Reagan assumes without conceding that 52 U.S.C. § 21082(a)(4) creates a federal right enforceable under 42 U.S.C. § 1983 and that compensatory damages are available. However, upon information and belief, no existing case has squarely addressed the issue as it pertains to the specific section Plaintiff relies on and the statutory scheme and administrative remedies suggest that compensatory damages are not available for a violation of HAVA. Defendant Reagan reserves the right to raise the issue in the future.

1 Cir. 2004).  HAVA has not supplanted or "strip[ped] from the States their traditional 2 responsibility to administer elections[,]" including their authority to set voter registration 3 deadlines.  *Id.* at 576.  "HAVA is quintessentially about being able to *cast* a provisional 4 ballot . . . but the ultimate legality of the vote cast provisionally is generally a matter of 5 state law."  *Id*.  Provisional votes cast pursuant to HAVA will only be counted if it is 6 determined that the voter was eligible to vote under applicable state law.  *Id*. at 576, 578.

7 One of the issues in *Sandusky* was whether provisional ballots should be counted 8 if they were cast by voters in the wrong precinct.  *Id*. at 576.  The court explained that 9 while HAVA requires that voters be permitted to cast a ballot, it does not require states 10 to count ineligible votes.  *Id*.  Rather, "if the voter is not eligible, the vote will then not 11 be counted."  *Id*.  Because Ohio law prohibited the counting of ballots cast in the wrong 12 precinct, HAVA did not require Ohio to count those provisional ballots, even though 13 voters were permitted to cast them.  *Id*. at 577-78.

14 Plaintiff does not dispute that he failed to register timely.  (Compl. ¶ 19 (admitting 15 that October 10, 2016 was the voter registration deadline); Compl. ¶ 24 (admitting that 16 Plaintiff registered to vote on October 11, 2016).)  Nor does he dispute that he was 17 permitted to cast a provisional ballot. (Compl. ¶ 35.)  Plaintiff disputes only whether the 18 deadline was properly set.  Even if the deadline *should have been* October 11, it was not.  19 Neither this Court, nor any other court ordered the State to change the voter registration 20 deadline, despite the plaintiffs' request in the 2016 Litigation for that exact order.  The 21 deadline remained set on October 10.  The fact remains that Plaintiff registered on 22 October 11.  Plaintiff cannot rewrite history.  He failed to timely register and therefore 23 he was not eligible pursuant to state law to vote in the 2016 General Election.  HAVA is 24 inapplicable and Plaintiff's Second Cause of Action should be dismissed.

25
26
**D.     Plaintiff's Claims Fail Because He Cannot Be Disenfranchised by a Voter Registration Deadline.**

27 Without a valid claim that he was disenfranchised, Plaintiff's lawsuit is devoid of 28 any claim upon which relief may be granted.  Plaintiff's claims are premised on his

allegations that: (1) he registered to vote on October 11, 2016 (the day after the registration deadline), (Compl. ¶ 8); (2) he attempted to vote in the 2016 General Election and was directed to cast a provisional ballot because his name did not appear on the election roll as an eligible voter for that election, (Compl. ¶ 35); and (3) his provisional ballot was not counted because he registered late, (Compl. ¶ 37). Put simply, Plaintiff claims he was denied the right to vote. But, even if Plaintiff can blame his dilatory registration on Defendant Reagan, he still fails to state a claim, because voter registration deadlines do not disenfranchise voters from an opportunity to vote, they merely set forth a deadline by which voters must act in order to cast a vote. *Rosario v. Rockefeller*, 410 U.S. 752 (1973); *Barilla v. Ervin*, 886 F.2d 1514, 1525 (9th Cir. 1989), *overruled on other grounds by Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174 (9th Cir. 1996).

### 1. The Supreme Court and Ninth Circuit Have Held That Voter Registration Deadlines Do Not Disenfranchise Voters.

*Rosario v. Rockefeller* concerned a class action challenge to a New York law requiring those wanting to vote in a party's primary election to register with the party at least thirty days before the general election held the previous November. 410 U.S. at 753-54. The plaintiffs waited until early December, 1971 (after the deadline), to enroll with a political party, even though they could have done so before the deadline. *Id*. at 755. They were therefore ineligible to vote in the 1972 primary election. *Id*. The plaintiffs filed suit for declaratory relief pursuant to 42 U.S.C. § 1983, alleging that through the registration statute, New York unconstitutionally disenfranchised them. *Id*. at 756. The Supreme Court held that the challenged statute "did not absolutely disenfranchise the class to which the petitioners belong" but "merely imposed a time deadline on their enrollment, which they had to meet in order to participate in the next primary." *Id*. at 768. The Court concluded that "if their plight can be characterized as disenfranchisement at all, it was not caused by [the challenged deadline], but by their own failure to take timely steps to effect their enrollment." *Id*. at 758.

11

In so deciding, the Court also rejected the district court's opinion that the plaintiffs' failure to meet the deadline was involuntary because they lacked "sufficient awareness of the relevant circumstances and likely consequences." *Id*. at 758 n.7. Those types of arguments "could well be made any time a State imposes a time limitation or cutoff point for registration or enrollment." *Id*. The pivotal point was that the state did not prevent plaintiffs from enrolling in a party by the deadline; rather, the plaintiffs themselves chose not to do so. *Id*. at 757-58. This fact distinguishes the New York law from other laws that the Supreme Court has declared unconstitutional, because those laws "totally denied the electoral franchise to a particular class of residents[.]" *Id*. at 757. The New York law, in contrast, was not a ban—just a time limit. *Id*. at 758.

Similarly, *Barilla v. Ervin* involved a challenge to Oregon's voter registration deadline. 886 F.2d at 1516. The plaintiffs asserted that the deadline unconstitutionally burdened their right to vote. *Id*. The district court ruled otherwise, and the plaintiffs appealed. *Id*. The Ninth Circuit began its analysis by noting that voter registration deadlines had been "repeatedly upheld, against similar challenges," by other courts. *Id*. at 1522. It affirmed the district court's decision, concluding that Oregon's deadline satisfied whatever level of scrutiny should be applied because it was necessary to the administration of elections. *Id*. at 1523-24.

However, the Ninth Circuit also explained that an alternative analysis required affirmance of the district court. *Id*. Relying on the Supreme Court's decision in *Rosario*, the court concluded that the plaintiffs "were all disenfranchised by their willful or negligent failure to register on time," not by Oregon's registration deadline. *Id*. at 1525. In other words, "[t]hey could have registered in time . . . but they failed to do so." *Id*. Accordingly, at issue was "not a 'ban' on the plaintiffs' right to vote, but rather, a 'time limitation' on when the plaintiffs had to act in order to be able to vote." *Id*. So, the registration deadline did not deny them the opportunity to vote and, therefore, did not disenfranchise them. *Id*.

## 2. This Court Properly Followed *Barilla* and *Rosario* When Deciding the 2016 Litigation.

Precedent requires the same result here as in *Barilla*, *Rosario*, and the nearly identical 2016 Litigation. Plaintiff asserts that he and others similarly situated were disenfranchised by the October 10 registration deadline. Similarly to the plaintiffs in *Barilla* and *Rosario*, Plaintiff *could have* registered before the registration deadline, but inexplicably chose not to. (*See* Compl. ¶ 8.) Even with all allegations in the Complaint taken as true, Plaintiff does not and cannot allege that Defendant Reagan did anything more than impose a time limitation on registration, in accordance with Arizona law. Just as in *Rosario*, if Plaintiff's plight can be characterized as disenfranchisement at all, the blame is borne only by Plaintiff himself and not Defendant Reagan. This is true whether or not Plaintiff believes that this time limitation was contrary to law or should have been set differently—because regardless of the actual date of the deadline, it is still merely a time limitation and not a ban on voting.

Judge Logan already addressed each aspect of this case and followed the precedent set by *Barilla* and *Rosario*. He concluded that the October 10 deadline did not disenfranchise voters who registered on October 11. *Reagan*, 2016 WL 6523427, at * 9. Those voters "could have registered in time for the general election, but unfortunately did not do so." *Id*. The Court recognized that "[t]he deadline did not prevent individuals from registering to vote in-person at the MVD or by postmarked mail; it merely required those wishing to do so during open operating business hours at some date and time prior to October 10, 2016." *Id*. There is a "critical difference between regulations that categorically deny the right to vote and those which merely require an applicant to take some action to satisfy reasonable registration requirements." *Id*. Accordingly, this Court concluded that there was no disenfranchisement, and any burden on constitutional rights was de minimus. *Id*. at 10, 12. Because the registration deadline served important state interests, the constitutional claims failed. *Id*. at 10-12.

In an effort to avoid this result and manufacture a distinction from the applicable line of cases, Plaintiff suggests that, based on the outcome of the 2016 Litigation, federal and state law required Arizona to count ballots cast by those who registered to vote on October 11 and cites as support Judge Logan's Order. (Compl. ¶ 31.) Plaintiff misconstrues Judge Logan's Order.

In the 2016 Litigation, the plaintiffs asked the Court to: (1) declare that NVRA and Arizona law required the voter registration deadline to fall on October 11 and (2) order that all those who registered to vote on October 11 be allowed to cast a regular ballot and have it counted in the upcoming election. *Reagan*, 2016 WL 6523427, at * 3. The Court agreed that Arizona's October 10 registration deadline violated NVRA and that state law was misapplied. *Id*. at * 14, 16. Critically, however, it denied plaintiffs' request for relief, and refused to order the state to count ballots cast by those who registered late. *Id*. at * 16-18. The Court concluded that plaintiffs' delay in bringing their lawsuit, waiting until October 19—the proverbial eve of the election—precluded the relief they sought, which was to have their votes counted. *Id*. at * 17.

The Court reached this conclusion even though it issued its Order on November 3, five days *before* the November 8, 2016 General Election. The Court *could* have ordered the State to count ballots cast by voters who, like Plaintiff, registered late. But it did not. *Id*. at * 12, 17. By declining to burden the State's election process after the deadline had already passed, this Court reaffirmed the important state interests involved in setting registration deadlines and maintaining the integrity of the election.

Plaintiff attempts to use the 2016 Litigation as a shield and a sword—citing the language that the State should have set the deadline on October 11, while ignoring the holding that the State was not required to count the votes of those ineligible due to late registration and conveniently bypassing the unequivocal language that plaintiffs were not disenfranchised. Cherry-picking language from the prior Order does not nullify the remainder of the Order. To permit this case to go forward is to re-litigate what has already been correctly decided.

14

### III. CONCLUSION

Plaintiff's factual allegations here mirror those made in the 2016 Litigation. The only difference is the relief sought. Since, as a matter of law, voter registration deadlines cannot disenfranchise those who fail to timely register, Plaintiff is ineligible for compensatory damages under NVRA, and HAVA does not apply to Plaintiff, all three counts in his Complaint fail. Accordingly, Defendant Reagan respectfully requests that Plaintiff's Complaint be dismissed in its entirety.

Respectfully submitted this 30th day of November, 2018

Mark Brnovich
Attorney General

s/ Stephanie Elliott
Stephanie Elliott
Jeremy Horn
Joseph E. La Rue
Kara M. Karlson
Assistant Attorneys General
*Attorneys for Defendant Michele Reagan, Arizona Secretary of State*

### CERTIFICATE OF SERVICE

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following, this 30th day of November, 2018:

Spencer G. Scharff
Scharff PLC
502 W. Roosevelt St.
Phoenix, AZ 85003
spencer@scharffplc.com

Nathan Fidel
Miller, Pitt, Feldman & McAnally, P.C.
2800 N. Central Ave, Suite 840
Phoenix AZ 85004-1069
Nfidel@mpfmlaw.com

*Attorneys for Plaintiff*

M. Colleen Connor
Talia J. Offord
Maricopa County Attorney
Civil Services Division
222 N. Central Avenue, Suite 1100
Phoenix, AZ 85004
connorc@mcao.maricopa.gov
offordt@mcao.maricopa.gov
*Attorneys for Maricopa County Defendants*


s/ Elizabeth Morales

#7487312