Spencer G. Scharff, No. 028946
SCHARFF PLC
502 W. Roosevelt Street
Phoenix, Arizona 85003
(602) 739-4417
spencer@scharffplc.com

Nathan Fidel, No. 025136
MILLER, PITT, FELDMAN & MCANALLY P.C.
2800 N. Central Ave, Suite 840
Phoenix AZ 85004
(602) 266-5557
nfidel@mpfmlaw.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Isabel, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Michele Reagan, in her individual capacity; Maricopa County; Adrian Fontes, in his official capacity as Maricopa County Recorder,<br><br>Defendants. | No. 2:18-cv-03217<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO MARICOPA COUNTY DEFENDANTS' MOTION TO DISMISS [Doc. 32]**<br><br>Assigned to: Judge Dominic Lanza<br><br>(Oral Argument Requested) |

The Motion to Dismiss filed by Maricopa County and Adrian Fontes (the "County") fundamentally misapprehends Plaintiff's claims and the difference between equitable and legal remedies. Plaintiff does not seek injunctive or declaratory relief. He seeks compensatory damages. Nevertheless, the County largely contends that the Court lacks jurisdiction to grant *injunctive* relief. In other words, most of the County's arguments are inapplicable to this action. The remainder are either inappropriate at this

procedural stage or fail for other reasons. Accordingly, the Court should deny the County's Motion.[1]

## I. LEGAL STANDARD

To invoke a federal court's subject-matter jurisdiction, a plaintiff need only provide a short and plain statement of the grounds for the court's jurisdiction. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). At the pleading stage, a court determines whether the plaintiff's allegations are sufficient as a legal matter to invoke the court's jurisdiction, accepting the allegations as true and drawing all reasonable inferences in plaintiff's favor. *Id.* (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).

## II. FACTUAL BACKGROUND

In 2016, the Secretary purported to set the voter registration deadline as October 10, 2016, which was also Columbus Day, a Monday holiday. Compl. ¶¶ 13, 15–19. The same issue had arisen in 2012, when the 29th day before the election also fell on Columbus Day—a state and federal holiday, thus extending the registration period by a day. Compl. ¶ 14. Despite this precedent from 2012, the Secretary announced that October 10th was the correct deadline and that it "could not lawfully be moved to October 11th." Compl. ¶ 20.

---

[1] Several of the County's arguments go to the merits of Plaintiff's claims, rather than the Court's jurisdiction. E.g., County Mot. at 8–12 (styled as a mootness argument but arguing that the affirmative defense of laches bars the action); *id.* at 13 (arguing the County is not a proper defendant); *id.* at 13–14 (arguing that failure to comply with the NVRA notice requirement bars Count I); *id.* at 14–15 (arguing that failure to exhaust administrative remedies bars Count II); *id.* at 16 (arguing that punitive damages are "inappropriate"). Such arguments are improper on a motion under Rule 12(b)(1) and appear to be an attempt to circumvent the certification requirement provided in LRCiv 12.1(c) and this Court's November 21, 2018 Preliminary Order. Notably, the County did not confer with Plaintiff prior to filing its Motion. This memorandum addresses those arguments on the merits, though the Court may reject them on this procedural basis alone. *See* LRCiv 12.1(c) ("A motion that does not contain the required certification may be stricken summarily.").

On October 19, 2016, the Arizona Democratic Party and the Democratic National Committee (the "Committees") filed suit in this Court seeking declaratory and injunctive relief, declaring that voters who registered on October 11, 2016 and were otherwise eligible to vote (the "October 11th Registrants") were in fact eligible to vote in the November 8, 2016 election and to undertake certain measures to ensure that they would be able to vote a regular ballot instead of a provisional ballot on election day. *Ariz. Democratic Party v. Reagan*, No. CV-16-03618, 2016 WL 6523427, at *5–6 (D. Ariz. Nov. 3, 2016) (the "2016 Opinion").[2] Because suit was filed less than three weeks before Election Day and already one week into early voting, the Court ordered expedited briefing and an expedited trial, which was held on October 21, 2016. *Id.* at *7. After trial, and with Election Day fast approaching, the Committees moved to modify the relief sought, in view of the proximity of the upcoming elections. The Committees sought to ensure that, even if the October 11th Registrants were not able to cast a regular ballot, their provisional ballots would be counted. *Id.* at *6.

On November 3, 2016, the Court ruled. *Id.* The Court found for the Committees on the merits—expressly holding that October 11, 2016, not October 10th, was the lawful deadline. As to state law, the Court held that A.R.S. § 16-120 had to be read in conjunction with A.R.S. § 16-134, which expressly permits some voter registrations received after the 29th day before an election to be valid for that election, and A.R.S. § 1-303, which permits acts performed on the day after a holiday to be treated as though they

---

[2] The County refers (at 2–3) to Plaintiff Counsel's pre-election efforts to encourage election officials not to violate federal and state law and deprive Plaintiff, and those similarly situated, of their voting rights. Contrary to the County's characterizations (at 2), neither Mr. Isabel nor the undersigned were parties in the 2016 action. Rather, the plaintiffs in the 2016 action were the Arizona Democratic Party and the Democratic National Committee. Plaintiff Isabel is not a member of those organizations, but, even if he were, those entities could not have brought claims for compensatory damages on Plaintiff's behalf because neither of them would have had standing to do so. *See Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. Cal.*, 159 F.3d 1178, 1181 (9th Cir. 1998) (holding associations only have standing to seek declaratory and injunctive relief on behalf of their members, not monetary damages).

were performed on the holiday. The Court further held that the state statutes should be read so as to permit October 11th registrations, "because any application of Ariz. Rev. Stat. § 16-120 that effectively requires [a] voter registration to be received earlier than 30 days before a federal election is superseded by NVRA." 2016 Opinion at *16.

Despite this holding on the merits, the Court declined to grant the Committees equitable relief, because the Committees should have brought suit sooner. The Court held that the prejudice arising from that delay precluded relief. *Id.* at *16. With only five days before Election Day, "administering the relief sought by the Committees . . . would have the effect of encumbering the election." *Id.* at *18. Moreover, the Court also declined to require that Defendants notify voters who registered on October 11th of their right to vote on Election Day. This was not because such voters were ineligible—they were—but because even if the state could identify those voters in time to send such a notice, there was no assurance that receiving a notice so close to Election Day would encourage rather than dissuade these eligible voters. *Id.* at *17. Finally, the Court denied as moot the request for modified relief ordering that October 11th Registrants be permitted to cast provisional ballots, because the Defendants acknowledged their right to do so. The Court therefore considered the issue moot. *Id.* at *12.

On November 8, 2016, Mr. Isabel went to his assigned polling location to cast his ballot. Compl. ¶ 35. There, poll workers instructed him to fill out a provisional ballot, because he was not on the list of eligible voters. *Id*. Mr. Isabel duly cast his provisional ballot, which was verified but, despite this Court's ruling, never counted. *Id*. at ¶ 37. Mr. Isabel first learned that his ballot was not counted in 2017, after election results had been certified. *Id*. at ¶¶ 42–43.

### III. PLAINTIFF HAS ARTICLE III STANDING TO PURSUE CLAIMS AGAINST THE COUNTY.

To establish standing, a plaintiff must allege facts demonstrating that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo,*

*Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The County does not dispute that Plaintiff suffered an injury in fact, but instead challenges the second and third elements of Plaintiff's Article III standing. Mot. at 4–7.

### A. Plaintiff's Injuries are Redressable—Federal Law Authorizes Courts to Award Damages for the Deprivation of a Citizen's Voting Rights.

The County contends (at 7) that "[t]here is no court decision that can remedy Plaintiff's alleged injury." The Supreme Court, however, has recognized time and again that "actions for damages may be maintained for wrongful deprivations of the right to vote." *Carey v. Piphus*, 435 U.S. 247, 264 n.22 (1978) (collecting cases); *see also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 311 n.14 (1986) (referencing "a long line of cases," dating back to common law precedents from English courts, "authorizing substantial money damages as compensation for persons deprived of their right to vote in particular elections"). Moreover, in recognition of their special place in the constellation of fundamental rights, courts have long held that damages are *presumed* for the wrongful deprivation of a citizen's voting rights:

> In the eyes of the law *this right is so valuable that damages are presumed* from the wrongful deprivation of it without evidence of actual loss of money, property, or any other valuable thing, and the amount of the damages is a question peculiarly appropriate for the determination of the jury, because each member of the jury has personal knowledge of the value of the right.

*Wayne v. Venable*, 260 F. 64, 66 (8th Cir. 1919) (emphasis added).

In short, an award of money damages—albeit an imperfect substitute for injunctive relief—can redress Plaintiff's injuries. *See, e.g., Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168–72 (9th Cir. 2002) (holding that Article III standing was satisfied where there was an injury redressable by money damages).

### B. Plaintiff's Injuries Are *Directly* Traceable to the County's Conduct.

To satisfy the causation requirement for Article III standing, Plaintiffs must allege injuries that are "fairly traceable to the actions of the defendant." *Bennett v. Spear*, 520 U.S. 154, 162 (1997). "Causation may be found even if there are multiple links in the chain connecting the defendant's unlawful conduct to the plaintiff's injury, and there's no requirement that the defendant's conduct comprise the last link in the chain." *Mendia v. Garcia*, 768 F.3d 1009, 1012–13 (9th Cir. 2014); *see also Attias v. Carefirst, Inc.*, 865 F.3d 620, 629 (D.C. Cir. 2017) (holding that Article III "does not require that the defendant be the most immediate cause, or even a proximate cause, of the plaintiffs' injuries; it requires only that those injuries be 'fairly traceable' to the defendant.").

Here, Plaintiff satisfied the "relatively modest" burden of alleging traceability at the pleading stage. *Bennett*, 520 U.S. at 171. The Complaint alleges that the County Recorder "is the final policymaker for Maricopa County with respect to the conduct described in this lawsuit," Compl. ¶ 13 n.1, and that, despite knowing that doing so violated federal and state law, the County adopted *and implemented* a policy that deemed invalid any ballot cast in the November 2016 Election by a voter who registered on October 11, 2016. *See id.* at ¶¶ 22–23. Plaintiff alleges that the County did not count his ballot as a direct result of its unlawful policy. *See id.* at ¶ 37; *see also* ¶¶ 38–39 (noting that "on or about November 28, 2016, Defendant Maricopa County and Defendant Fontes's predecessor, certified the 2016 General Election Official Canvass" despite knowing that Plaintiff's ballot was not counted).

The County appears to conflate comparative fault with traceability, and contends that fault lies with the Secretary of State and Plaintiff himself. *See* Mot. at 6 ("Maricopa County did not set the voter registration deadline"); ("Plaintiff's own actions contributed to his alleged injury"). The County, however, cites no case—and none appear to exist—for the proposition that a court may or should consider comparative fault in assessing whether a plaintiff demonstrates an injury that is "fairly traceable" to the defendant's

conduct to satisfy Article III's requirement. Even if one existed, a plaintiff need not *establish* the degree of fault at the pleading stage to establish Article III standing.

To the extent the County is asserting a the-Secretary-made-us-do-it defense, binding caselaw requires this Court to reject such a defense. *See Evers v. Custer County*, 745 F.2d 1196, 1203 (9th Cir. 1984) (concluding that *Monell* liability still attaches even when a county defendant was "merely acting according to state law"); *United States v. Classic*, 313 U.S. 299, 326 (1941) (noting that § 1983 provides protection to those wronged by the "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is *clothed with the authority of state law*."). Plaintiff's allegations establish that the County adopted the October 10, 2016 Policy as the County's official policy and made the decision to implement it after learning that the policy violated state and federal law. *See* Compl. at ¶¶ 22–23, 29–31, 38–39. The County concedes, as it must, that it failed to count Plaintiff's ballot. Mot. at 6 ("Maricopa County is the entity that tallied the ballots in the 2016 General Election . . . .").

### IV. PLAINTIFF'S CLAIMS FOR *COMPENSATORY* DAMAGES ARE NOT MOOT.

The County contends (at 8) that the passage of Senate Bill 1307 renders Plaintiff's claims moot. This argument might make sense if the Plaintiff were only seeking injunctive or other prospective relief. Again, however, the Complaint seeks compensatory damages. *See Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 902 (9th Cir. 2007) (holding that "the repeal of the ordinance under which Outdoor Media's permits were denied does not moot its claim for damages"); *see also Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 872 (9th Cir. 2002) ("A live claim for nominal damages will prevent dismissal for mootness."); *see also* 13C Charles Alan Wright, Arthur R. Miller, & Edward Cooper, Federal Practice and Procedure § 3533.3 (3d ed. 2004) ("Claims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable.").

To the extent the County is suggesting that SB 1307 reflects a change rather than a clarification of state law, any such argument would go to the merits of Plaintiff's claim, not the Court's jurisdiction. As to substance, the question of state law was squarely decided by this Court in its previous opinion. *See* 2016 Opinion at *26–30 (holding that the Committees prevail on the merits of their state law claim); *see also id.* at *23–26 (same with respect to the NVRA claim). Despite these clear holdings on the merits, the County mischaracterizes the 2016 Opinion elsewhere as holding that the purported October 10th registration deadline enforced by the County violated the NVRA but not state law. County Mot. at 3.

In any event, the County's mootness argument is misplaced, because a 2017 amendment to state law does not compensate Mr. Isabel or the other class members for damages suffered in 2016. It therefore does not moot his damages claims.

## V. THE COURT SHOULD DENY THE COUNTY'S IMPROPER LACHES ARGUMENT.

Laches is an affirmative defense that cannot be resolved at the pleading stage. "The defense of laches 'requires *proof* of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658, 666 (9th Cir. 1980) (quoting *Costello v. United States*, 365 U.S. 265, 282 (1961)) (emphasis added).

"The very purpose of laches as an *equitable* doctrine—and the reason it differs from a statute of limitations—is that the claim is barred because the plaintiff's delay occasioned the defendant's prejudice." *See Arizona Minority Coalition for Fair Redistricting v. Ariz. Indep. Redistricting Comm'n*, 366 F.Supp.2d 887, 908 (D. Ariz. 2005) (emphasis added) (quoting *Danjaq, LLC v. Sony Corp.*, 263 F.3d 942, 954 (9th Cir. 2001). Accordingly, courts have consistently "held that laches is inapplicable to claims seeking only monetary damages, including Section 1983 claims for monetary damages only." *Acasio v. Lucy*, No. 14-CV-04689-JSC, 2017 WL 1316537, at *16 (N.D. Cal. Apr. 10, 2017); *see also Wyler Summit P'ship v. Turner Broad. Sys.*, 235 F.3d 1184,

1193-94 (9th Cir. 2000) (holding that breach of contract claim seeking money damages was an action at law that precluded defense of laches).

But even assuming that a laches defense were available to the County in this action—it is not—determining whether delay was unexcused or unreasonable and whether prejudice ensued necessarily demands "a close evaluation of all the particular facts in a case." *Kling v. Hallmark Cards Inc.*, 225 F.3d 1030, 1041 (9th Cir. 2000). For this reason, a claim is not easily disposed of at the motion to dismiss stage based on a laches defense. *See Kourtis v. Cameron*, 419 F.3d 989, 1000 (9th Cir. 2005) (holding laches defense was "premature" at the motion to dismiss phase because of the difficulty of establishing such a defense based exclusively upon the factual allegations set forth in the complaint), *abrogated on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008); *see also Bratton*, 649 F.2d 658, 666–67 ("Laches questions are seldom susceptible of resolution by summary judgment, because where laches is raised as a defense the factual issues involved . . . can rarely be resolved without some preliminary evidentiary inquiry." (internal quotation omitted)).

The County does not offer any basis for asserting that Mr. Isabel delayed unreasonably in bringing suit. Despite the Complaint's allegation that Mr. Isabel "first learned that his ballot was not counted in 2017," Compl. ¶ 43, the County argues in some places that Plaintiff "would have known" and in other places that he "should have known" that his ballot was not counted "on or near November 18, 2016." County Mot. at 10, 12. Because the County asserts a facial attack under Rule 12(b)(1), the Court must accept Plaintiff's allegations. *Leite*, 749 F.3d at 1121. But even if the County's arguments were credited, the County concedes that Mr. Isabel filed suit within two years of learning of his injury. The statute of limitations period for most § 1983 actions in Arizona is two years. Assuming arguendo that a laches defense is available in a § 1983 action for damages—again, it is not—there is a "strong presumption" that laches do not apply when the action is filed within the applicable limitations period. *See Jarrow*

*Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 836–37 (9th Cir. 2002).  The County offers no good reason why this presumption should not apply here.

Nor does the County articulate any kind of prejudice.  The County cursorily asserts an evidentiary-based prejudice on account of fading witness memory.  But this case is not heavily dependent on witness testimony and the relevant facts are largely matters of public record.  The County offers no reason why it can defend an action for jail conditions filed within § 1983's two-year time limit, but not an action for unlawful miscounting of a narrowly defined class of voters, ascertainable from public records.  Moreover, those public records must be preserved for at least two years, within the statute of limitations for a § 1983 action.  *See* A.R.S. § 16-624(a) (requiring preservation of poll lists and provisional ballots for two years from the date of the election).  In short, the County articulates no intelligible evidentiary-based prejudice in this action.

As to expectations-based prejudice, the County's argument relies on cases that are wholly inapposite to an action for damages.  It is true that when a party seeks an injunction affecting an upcoming election, a delay in filing suit can prejudice the defendant by leaving it without adequate time to prepare for the requested relief or prejudice the court by requiring a rushed consideration of the case.  *See Arizona Minority Coalition*, 366 F.Supp.2d at 908 (finding laches where plaintiffs sought to enjoin the use of a legislative map drawn by the Independent Redistricting Commission, which had already been pre-cleared by DOJ, and which Arizona counties had already undertaken substantial work to implement before an upcoming election); *Mathieu v. Mahoney*, 174 Ariz. 456, 459 (1993) (finding laches where an action to enjoin the printing of a particular ballot initiative was brought so close to the time for printing ballots that it "strain[ed] the quality of decision making" and "prejudiced defendants in the preparation of their defense.").  Such considerations, however, pertain only to an action seeking injunctive relief on a short timeframe.  They are irrelevant to an action for damages.

## VI. THE NVRA'S NOTICE REQUIREMENT DOES NOT PRECLUDE PLAINTIFF'S COUNT I.

The County argues that Count I should be dismissed, because the NVRA requires pre-suit notice. As a preliminary matter, the NVRA's notice requirement does not apply to § 1983 actions. But even if the notice requirement did apply, this Court already rejected that argument in the 2016 litigation. It is even weaker here.

### A. The NVRA's Notice Requirement Does Not Apply to a Civil Action Pursuant to Section 1983.

Count I of the Complaint is brought pursuant to § 1983, not the NVRA's private right of action. A plaintiff seeking to enforce the NVRA through a § 1983 action need not comply with its notice requirements. *See Condon v. Reno*, 913 F. Supp. 946, 960 (D.S.C. 1995); *Ass'n of Cmty. Organizations for Reform Now v. Miller*, 912 F. Supp. 976, 982 (W.D. Mich. 1995) ("Because notice is not required by [§ 1983], the above plaintiffs' failure to provide notice is wholly irrelevant"), *aff'd*, 129 F.3d 833 (6th Cir. 1997).

### B. The County's *First* NVRA Violation Vis-à-Vis Plaintiff Occurred Within 30 Days of the 2016 General Election.

The NVRA's notice provision allows that "the aggrieved person need not provide notice" if "the violation occurred within 30 days before the date of an election for Federal office." 52 U.S.C. § 20510(b)(3). Plaintiff registered to vote on October 11, 2016—28 days before the date of the election. The County did not process his voter registration application—i.e. deem him ineligible for the 2016 General Election—until October 14, 2016. *See* Compl. at ¶ 26 (alleging that the County issued his Voter Registration Card on October 14, 2016). Thus, as this Court has already held in the 2016 litigation, even if the NVRA's notice provision applies here, Plaintiff was not required to submit a pre-filing notice. *See* 2016 Opinion at 14.

That holding has even more force with respect to the Defendants' NVRA violations that took place later in time. Compl. ¶¶ 35–43. Moreover, the County had already received notice that the October 10, 2016 Policy violated the NVRA in the form

11

of the Committees' lawsuit. The NVRA does not require Mr. Isabel to provide a separate notice. *See Miller*, 912 F. Supp. at 982–83.

## VII. ARIZONA'S ADMINISTRATIVE REMEDIES DO NOT PRECLUDE PLAINTIFF'S CLAIMS.

### A. The County Improperly Raises Exhaustion in a Rule 12(b)(1).

#### 1. HAVA Administrative Remedies Are Not Jurisdictional.

"Threshold requirements that claimants must complete, or exhaust, before filing a lawsuit are typically treated as nonjurisdictional." *LULAC v. Wheeler*, 899 F.3d 814, 821–22 (9th Cir. 2018) (internal citations omitted). Accordingly, the Ninth Circuit has rarely found exhaustion statutes to be a jurisdictional bar. *See, e.g.*, *McBride Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973, 978 (9th Cir. 2002) (holding that requirement of "exhaust[ing] all administrative appeal procedures ... before [a] person may bring an action in a court" was not jurisdictional). Thus, administrative remedies qualify as jurisdictional only if "Congress has clearly stated that the rule is jurisdictional." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013). Although Congress conditioned the receipt of HAVA funds on the establishment of state-based administrative complaint procedures, Congress did not provide that such procedures would be exclusive, let alone jurisdictional. *See* 52 U.S.C. § 21112.

#### 2. Lack of Exhaustion is an Affirmative Defense Not Appropriate for a Rule 12(b)(1) or 12(b)(6) Motion.

The failure to exhaust administrative remedies is an affirmative defense that should not be considered at the pleading stage. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). Thus, Plaintiff did not have an obligation to plead exhaustion, and his claims cannot be dismissed for failing to do so. *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Complaints need not contain *any* information about defenses and may not be dismissed for that omission.").

### B. Failure to Exhaust Arizona's Administrative Complaint Procedures Does Not Preclude Plaintiff's § 1983 Claim.

Generally, exhaustion of state judicial or state administrative remedies is not a prerequisite to bringing an action under § 1983. *See Patsy v. Bd. of Regents*, 457 U.S. 496, 500 (1982) ("[W]e have on numerous occasions rejected the argument that a § 1983 action should be dismissed where the plaintiff has not exhausted state administrative remedies."); *Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005). Notably, Courts analyzing HAVA's remedial scheme have held that it does not preclude § 1983 actions:

> Individual enforcement of this right under § 1983 is not precluded by either the explicit language of HAVA, or by a comprehensive enforcement scheme incompatible with individual enforcement. We have reviewed both HAVA's requirement that those States wishing to receive certain types of federal funding must provide administrative procedures by which citizen complaints may be reviewed and resolved, *see* 42 U.S.C. § 15512, and its provision that the U.S. Attorney General may bring a civil action to enforce HAVA's requirements, *see id*. § 15511. We do not find that these provisions, taken together, indicate a congressional intention to "shut the door" to federal judicial review of state actions, which would be otherwise unavailable to citizens whose right to vote provisionally has been denied or abridged.

*Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565, 573 (6th Cir. 2004).

Moreover, neither the relevant HAVA provision nor Arizona's Administrative Complaint Procedures provide that the complaint procedures are the exclusive method of adjudicating HAVA violations. Rather, 52 U.S.C. § 21112 merely provides that "any person who believes that there is a violation of any provision of subchapter III (including a violation which has occurred, is occurring, or is about to occur) *may* file a complaint." *Id*. at § 21112(a)(2)(B) (emphasis added). The use of the permissive term "may" in the statutory language provides further support for the conclusion that a person need *not* exhaust all administrative appeal procedures before that person will be allowed bring an action in district court.

    **C.    Any Restrictions Imposed by Arizona's Administrative Complaint Procedures Do Not Apply to a Section 1983 Action.**

The County contends (at 16) that "[t]he 2014 Manual prescribes the appropriate remedies for a complaint brought pursuant to the State of Arizona Grievance Process" and argues on this basis that punitive damages are "inappropriate." First, this Action is brought pursuant to 42 U.S.C. § 1983, not any state prescribed grievance process. Second, to the extent state law seeks to impose any restrictions on the § 1983 remedies otherwise available under the common law of torts, such restrictions are not applicable. *Ditullio v. Boehm*, 662 F.3d 1091, 1097–98 (9th Cir. 2011) ("the federal common law of damages commands the issue of damages") (quoting *Basista v. Weir*, 1098 340 F.2d 74, 87 (3d Cir. 1965)); *see also Haywood v. Drown*, 556 U.S. 729, 737 (2009) (striking down a New York state law that restricted the ability of prisoners to seek restitution from correctional officers as preempted by Section 1983).

**VIII. CONCLUSION**

    For the foregoing reasons, the County's Motion to Dismiss should be denied in its entirety.

    RESPECTFULLY SUBMITTED this 7th day of January, 2019

    By:    *s/ Spencer G. Scharff*
            Spencer G. Scharff
            SCHARFF PLC

               &amp;

            Nathan Fidel
            MILLER, PITT, FELDMAN & MCANALLY P.C.

            *Attorneys for Plaintiff*
            David Isabel

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2019, I electronically transmitted the above document to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*s/ Spencer G. Scharff*