Spencer G. Scharff, No. 028946
SCHARFF PLC
502 W. Roosevelt Street
Phoenix, Arizona 85003
(602) 739-4417
spencer@scharffplc.com

Nathan Fidel, No. 025136
MILLER, PITT, FELDMAN & MCANALLY P.C.
2800 N. Central Ave, Suite 840
Phoenix AZ 85004
(602) 266-5557
nfidel@mpfmlaw.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Isabel, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Michele Reagan, in her individual capacity; Maricopa County; Adrian Fontes, in his official capacity as Maricopa County Recorder,<br><br>Defendants. | No. 2:18-cv-03217<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO MICHELE REAGAN'S MOTION TO DISMISS [Doc. 33]**<br><br>Assigned to: Judge Dominic Lanza<br><br>(Oral Argument Requested) |

This is a § 1983 action to vindicate voting rights on behalf of a putative class of voters. Plaintiff David Isabel timely registered to vote in Arizona on October 11, 2016, but because the Defendant Michele Reagan (the "Secretary") unlawfully limited the voter rolls to those who registered on or before October 10th, his provisional ballot was not counted in the November 8, 2016 General Election (the "November 2016 Election"). The Secretary now moves under Rule 12(b)(6) to dismiss the complaint on three grounds. Because each of her arguments fails, the Court should deny the Secretary's motion.

First, the Secretary argues that the National Voter Registration Act ("NVRA") does not provide for compensatory damages and therefore precludes them. The Supreme Court has held that federal rights are presumptively enforceable under § 1983, but this presumption may be rebutted where a statute provides a "comprehensive enforcement scheme that is inconsistent with individual enforcement under § 1983." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120 (2005) ("*Palos Verdes*"). Because the NVRA's savings clause makes clear that the NVRA was not intended as a "comprehensive enforcement scheme" of any kind, much less one that is inconsistent with enforcement under § 1983, the existence of some remedies under the NVRA does not preclude the availability of those *presumed* under § 1983.

The Secretary's second and third arguments both suffer from the same flaw: they ignore the holdings in this Court's previous decision, which correctly decided that voters like Mr. Isabel had timely registered to vote and were eligible to vote in the November 2016 Election. The Secretary's second argument, that Mr. Isabel's registration was untimely under state law, was explicitly rejected by the Court in its 2016 decision. The Secretary's third argument skirts the question entirely, misinterpreting the Court's 2016 decision as somehow ruling that Mr. Isabel's registration was untimely and arguing that all voter registration deadlines are lawful. Because the premise is flawed, so is the conclusion.

Accordingly, the Court should deny the Secretary's Motion to Dismiss in its entirety.

**I. FACTUAL BACKGROUND**

In 2016, the Secretary purported to set the voter registration deadline as October 10, 2016, which was also Columbus Day, a Monday holiday. Compl. ¶¶ 13, 15–19. The same issue had arisen in 2012, when the voter registration deadline was set as the day after Columbus Day, in light of Columbus Day's status as both a state and federal holiday. Compl. ¶ 14. Despite this precedent from 2012, the Secretary announced that

October 10th was the correct deadline and that it "could not lawfully be moved to October 11th." Compl. ¶ 20.

On October 19, 2016, the Arizona Democratic Party and the Democratic National Committee (the "Committees") filed suit in this Court seeking declaratory and injunctive relief, declaring that voters who registered on October 11, 2016 and were otherwise eligible to vote (the "October 11th Registrants") were in fact eligible to vote in the November 8, 2016 election and to undertake certain measures to ensure that they would be able to vote a regular ballot instead of a provisional ballot on election day. *Ariz. Democratic Party v. Reagan*, No. CV-16-03618, 2016 WL 6523427, at *5–6 (D. Ariz. Nov. 3, 2016) (the "2016 Opinion"). Because suit was filed less than three weeks before Election Day and already one week into early voting, the Court ordered expedited briefing and an expedited trial, which was held on October 21, 2016. *Id.* at *7. After trial, and with Election Day fast approaching, the Committees moved to modify the relief sought, in view of the proximity of the upcoming elections. The Committees sought to ensure that, even if the October 11th Registrants were not able to cast a regular ballot, their provisional ballots would be counted. *Id.* at *6.

On November 3, 2016, the Court ruled. *Id.* The Court found for the Committees on the merits—expressly holding that October 11, 2016, not October 10th, was the lawful deadline. As to state law, the Court held that A.R.S. § 16-120 had to be read in conjunction with A.R.S. § 16-134, which expressly permits some voter registrations received after the 29th day before an election to be valid for that election, and A.R.S. § 1-303, which permits acts performed on the day after a holiday to be treated as though they were performed on the holiday. The Court further held that the state statutes should be read so as to permit October 11th registrations, "because any application of Ariz. Rev. Stat. § 16-120 that effectively requires [a] voter registration to be received earlier than 30 days before a federal election is superseded by NVRA." 2016 Opinion at *16.

Despite this holding on the merits, the Court declined to grant the Committees equitable relief, because the Committees should have brought suit sooner. The Court held that the prejudice arising from that delay precluded relief. *Id.* at *16. With only five days before Election Day, "administering the relief sought by the Committees . . . would have the effect of encumbering the election." *Id.* at *18. Moreover, the Court also declined to require that Defendants notify voters who registered on October 11th of their right to vote on Election Day. This was not because such voters were ineligible—they were—but because even if the state could identify those voters in time to send such a notice, there was no assurance that receiving a notice so close to Election Day would encourage rather than dissuade these eligible voters. *Id.* at *17. Finally, the Court denied as moot the request for modified relief ordering that October 11th Registrants be permitted to cast provisional ballots, because the Defendants acknowledged their right to do so. The Court therefore considered the issue moot. *Id.* at *12.

On November 8, 2016, Mr. Isabel went to his assigned polling location to cast his ballot. Compl. ¶ 35. There, poll workers instructed him to fill out a provisional ballot, because he was not on the pre-printed list of eligible voters. *Id*. Mr. Isabel duly cast his provisional ballot, which was verified but, despite this Court's ruling, never counted. *Id*. at ¶ 37. Mr. Isabel first learned that his ballot was not counted in 2017, after election results had been certified. *Id*. at ¶¶ 42–43.

## II.  SECTION 1983 IS AVAILABLE TO ENFORCE RIGHTS UNDER THE NVRA.

### A.  The Court Must Presume That the NVRA is Enforceable under § 1983 Because the NVRA Creates Enforceable Rights.

Titled "Civil action for deprivation of rights," 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

> Constitution and laws, *shall be liable* to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id*. (emphasis added).

Because § 1983 has long been "an independent safeguard against deprivations of federal constitutional and statutory rights," courts will not "lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy" for the deprivation of a federal right. *Smith v. Robinson*, 468 U.S. 992, 1012 (1984). As a result, the Supreme Court has instructed courts to *presume* that a federal statute is enforceable under § 1983, if the statute creates an enforceable right. *See Palos Verdes*, 544 U.S. at 120 (reaffirming that courts apply "a rebuttable presumption that the right is enforceable under § 1983"); *see also id*. at 120 (*declining* "to hold that the availability of a private judicial remedy is not merely indicative of, but conclusively establishes, a congressional intent to preclude § 1983 relief").[1] A defendant may rebut the "presumption by demonstrating that Congress did not intend that remedy for a newly created right." *Id*. "[E]vidence of such congressional intent may be found directly in the statute creating the right, or inferred from the statute's creation of a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Id*. (internal quotations and citations omitted).

Here, the Secretary concedes, as she must, that the NVRA creates enforceable rights. *See* Reagan Mot. at 8 ("Congress arguably created an 'enforceable right.'").[2] Thus, this court must presume that the NVRA is enforceable unless the Secretary

---

[1] *See also POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 111 (2014) (noting that the presumption against preemption does not apply to "alleged preclusion of a cause of action under one federal statute by the provisions of another federal statute").

[2] *See also Ass'n of Cmty. Organizations for Reform Now v. Miller*, 912 F. Supp. 976, 982 (W.D. Mich. 1995), ("[T]here can be no serious question that the NVRA creates an enforceable right under § 1983"), *aff'd*, 129 F.3d 833 (6th Cir. 1997).

5

establishes the statutory scheme reflects a congressional intent to preclude its enforcement under § 1983.

### B. Section 11(d) of the NVRA Reflects Congressional Intent to Authorize Section 1983 Actions for Damages.

Plaintiff agrees with the Secretary's statements (at 8) that (1) Congress provided a "mechanism for aggrieved parties" to obtain *injunctive* and *declaratory* relief, and (2) the NVRA does not expressly provide "for retrospective claims, compensatory, or punitive damages for any adjudged violation." Without more, the preclusion question would be a close one. *See generally Stilwell v. City of Williams*, 831 F.3d 1234 (9th Cir. 2016) (summarizing the relevant framework for preclusion cases when a statute is silent as to its relationship with other laws).

But the case at bar is not close, because, as the Secretary strikingly fails to address in her motion papers, Congress directly addressed the NVRA's supplemental nature in a section concerning the NVRA's "[r]elation to other laws," 52 U.S.C. § 20510(d). That section provides:

> The rights and remedies established by this section are in addition to all other rights and remedies provided by law, and neither the rights and remedies established by this section nor any other provision of this chapter shall supersede, restrict, or limit the application of the Voting Rights Act of 1965.

Section 11(d) of the NVRA ("Civil Enforcement and Private Right of Action"), codified at 52 U.S.C. § 20510(d)(1). Among other things, this savings clause makes clear Congress's intent that the NVRA's enforcement mechanism is *not* a "comprehensive enforcement scheme" and further that the rights provided by the NVRA may be enforced by remedies provided by other laws, including § 1983.

Not surprisingly, courts have relied on this provision to conclude that the NVRA does not preclude § 1983 actions. *See Miller*, 912 F. Supp. at 982 (relying on the NVRA's savings clause to reject Defendants' "claim that a § 1983 action based on the

NVRA is barred"); *Condon v. Reno*, 913 F. Supp. 946, 960 (D.S.C. 1995) (finding that the NVRA's savings clause authorizes § 1983 actions). Statutes with savings clauses that have not preserved § 1983 claims are distinguishable from the NVRA's in at least three respects.

First, the savings clauses in those cases were quite narrow. *See Palos Verdes*, 544 U.S. at 125 (describing the clause at issue as a "so-called" saving clause); *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 15 (1981) (finding even the weak language in the FWCPA's saving clause "quite ambiguous concerning the intent of Congress to preserve remedies under the FWCPA itself"). The savings clauses at issue stated a limited intent not to interfere with rights that had existed before the relevant statutes had been enacted but is silent on whether the rights created by the relevant statutes can be enforced by remedies provided elsewhere. *Palos Verdes*, 544 U.S. at 126 ("This Act and the amendments made by this Act shall not be construed to modify, impair, or supersede Federal, State, or local law unless expressly so provided in such Act or amendments."); *Sea Clammers*, 453 U.S. at 7 n.10 ("Nothing in this section shall restrict any right which any person … may have … to seek enforcement of any effluent standard or limitation or to seek any other relief….").

In contrast, the NVRA preserves "all other … remedies provided by law." 52 U.S.C. § 20510(d). Courts have repeatedly held against preclusion when confronted with similarly broad language. In *Herman & McLean v. Huddleston*, the Supreme Court addressed nearly identical savings clauses and held that they evidenced Congress's intent to supplement, not preclude:

> In savings clauses included in the 1933 and 1934 Acts, Congress *rejected* the notion that the express remedies of the securities laws would preempt all other rights of action. Section 16 of the 1933 Act states unequivocally that "[t]he rights and remedies provided by this subchapter shall be in addition to any and all other rights and remedies that may exist at law or in equity." 15 U.S.C. § 77p. Section 28(a) of the 1934 Act contains a parallel

> provision. 15 U.S.C. § 78bb(a). *These provisions confirm that the remedies in each Act were to be supplemented by "any and all" additional remedies.*

459 U.S. 375, 383 (1983) (emphasis added); *see also In re NOS Commc'ns*, 495 F.3d 1052, 1058 (9th Cir. 2007) (preemption would render the savings clause "mere surplusage"); *Pinney v. Nokia, Inc.*, 402 F.3d 430, 450–51 (4th Cir. 2005) (rejecting the notion that Congress intended a federal statutory scheme "to provide the exclusive remedy" where the statute's contained a savings clause similar to the NVRA's).

Second, the statutes at issue in *Palos Verdes* and *Sea Clammers* addressed technical statutory rights with complex and detailed frameworks. *Palos Verdes*, 544 U.S. at 123 (describing the statutory scheme as "complex and novel"); *Sea Clammers*, 453 U.S. at 13 (describing the enforcement provisions as "unusually elaborate"). The structure and language of the statutes therefore evinced an intent to create a "comprehensive enforcement scheme" for those complex and novel rights. The NVRA, by contrast, provides a simple enforcement mechanism that cannot fairly be described as "comprehensive," even if there were no savings clause to make clear that the NVRA's enforcement scheme is, in fact, supplemental.

Third, as the Court in *Palos Verdes* noted, the rights at issue in that case "did not even arguably exist before the passage" of the Telecommunications Act of 1996. 544 U.S. at 126. The Defendants' NVRA violations, in contrast, implicate not only a pre-existing right of Mr. Isabel's arising under state and federal law, but one that is of substantial constitutional concern. *See Stilwell*, 831 F.3d at 1248 (reversing the district court's conclusion that § 1983 was precluded, because the underlying rights violated were substantial constitutional rights, and distinguishing the "purely statutory rights" as in *Sea Clammers* and *Palos Verdes*).

### C. The Congressional Reports Cited by the Secretary Do Not Support Her Position.

The Secretary highlights (at 8) two congressional committee reports, which indicated that the NVRA did not authorize "the award of monetary damages." These Reports, however, are consistent with *Plaintiff's* position. Both reports indicate that "this section" does not authorize compensatory damages. That is accurate. The plain text of 52 U.S.C. § 20510 simply authorizes injunctive and declaratory relief. The reports, however, do not indicate that those sections are designed to *preclude* a § 1983 action for damages. Rather, as discussed above, Congress expressed their desire to authorize any other remedies authorized by law.

Regardless, this Court should decline the Secretary's invitation to engage in Congressional mind reading and focus on the plain meaning of the relevant law's text. *See* A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, at 369 (2012) (discussing "[t]he false notion that committee reports and floor speeches are worthwhile aids in statutory construction"); *see also id*. at 103–04 (bemoaning statutory interpretations that fail to give "general terms their general meaning" because of the misguided belief that "those who adopted the provision had in mind a particular narrow objective").

### III. UNDER ARIZONA LAW, VALID VOTER REGISTRATION FORMS SUBMITTED ON OCTOBER 11, 2016 WERE TIMELY.

The Secretary contends that Plaintiff's HAVA claim fails because he was ineligible to vote in the November 2016 Election:

> The deadline remained set on October 10. The fact remains that Plaintiff registered on October 11. Plaintiff cannot rewrite history. He failed to timely register and therefore he was not eligible pursuant to state law to vote in the 2016 General Election.

Reagan Mot. at 10. Although this argument suffers from a number of legal and logical flaws, this Court need only consider A.R.S. §1-303 to summarily dismiss it.

9

Contrary to the Secretary's contention (at 10), no court needed to order her to "change the voter registration deadline" for Plaintiff to have been eligible to vote in the November 2016 Election. Under Arizona law, when a deadline to perform a function falls on a holiday, "it may be performed on the next ensuing business day with effect as though performed on the appointed day." A.R.S. § 1-303. Thus, even if the NVRA did not require the Secretary to deem all valid voter registrations forms submitted on October 11, 2016 timely, Arizona law required her to do so. Under the plain reading of A.R.S. § 1-303, the Secretary was required to treat all valid registration forms, including Plaintiff's, submitted on October 11th *as if* they were submitted on October 10th.[3] *See* Ariz. Att. Gen. Op. No. 58-74 (concluding that when the close of registration for a primary election fell on July 4th, A.R.S. § 1-303 instructs that "the registration of electors . . . may be performed on the next ensuing business day with the effect as though performed on the appointed day"). In sum, Plaintiff was eligible to vote under Arizona law, and the Secretary violated HAVA, *inter alia*, by failing to ensure his ballot was counted. *See also* 2016 Opinion at *16 (finding that "the Committees prevail on the merits of their *state law* claim.").

## IV. DEFENDANT REAGAN'S CONDUCT DISENFRANCHISED PLAINTIFF.

The Secretary attacks a strawman, misconstruing Plaintiff's claims as a broadside against voter registration deadlines. *See* Reagan Mot. at 10–15 (arguing that "voter registration deadlines do not disenfranchise voters"). Plaintiff, however, does not contend that voter registration deadlines, in and of themselves, disenfranchise voters. Rather, he simply contends that *he* was disenfranchised, because the Secretary, acting in concert with the County Defendants, unlawfully deemed him ineligible to vote in the

---

[3] *Cf. Davenport v. United States,* 217 F.3d 1341, 1344 (11th Cir. 2000) ("'Relation back' causes an otherwise untimely claim to be considered timely by treating it as if it had been filed when the timely claims were filed.").

10

November 2016 Election.[4] In other words, Plaintiff's ballot would have counted, but for the Defendants' unlawful conduct.

### A. The Court's Refusal to Issue an Advisory Opinion Regarding Provisional Ballots Did Not Authorize Defendants to Miscount Them.

The Secretary acknowledges the Court's 2016 Opinion that her application of an October 10th deadline violated state and federal law, but she argues that the Court's decision not to award equitable relief in that lawsuit gave her license to ignore the Court's decision on the merits. As she herself has acknowledged, the 2016 Opinion required the opposite. *See* Compl. ¶¶ 32–33 (noting that the Secretary "personally and formally approved the 2018 Elections Procedures Manual" "which cites to Judge Logan's Order for the proposition that "the voter registration deadline must be moved closer to election day if the closure of State or Federal offices would cause a method of registration to be unavailable within the 30-day period preceding the next election.").

As set forth above, the Committees sought post-trial to modify the relief requested to ensure that October 11th Registrants' provisional ballots would be counted. The Court denied that motion as moot, because the Defendants did not dispute their ability to complete a provisional ballot. *See* 2016 Opinion at *12. The Court did not read the Committees' motion to request a declaration of the eligibility of such voters under state and federal law, but noted that even if they had so requested, any ruling on that question would have constituted an impermissible advisory opinion in the absence of an actual voter who had been determined to be ineligible. *Id.* at *16, n.15.

Dismissal for lack of ripeness is a dismissal for lack of subject-matter jurisdiction and therefore has no bearing on the merits of the case. *See* Fed. R. Civ. P. 41(b)

---

[4] To the extent the Secretary's conduct encouraged the County Defendants to act as they did, she is also liable for the harms caused by the County Defendants' conduct as well. *See Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004) (holding that a § 1983 defendant is liable for the naturally foreseeable consequences of his actions, including consequences from the reasonably foreseeable intervening acts of third parties).

(dismissals for lack of jurisdiction are without prejudice); *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1116 (9th Cir. 2015) (ripeness goes to subject-matter jurisdiction); *Haw. Newspaper Agency v. Bronster*, 103 F.3d 742, 745 (9th Cir. 1996) (same); *In re Hall*, 939 F.2d 802, 804 (9th Cir. 1991) (reversing and ordering dismissal without prejudice for lack of jurisdiction). Moreover, the Court's evaluation of the other permanent injunction factors cannot derogate from its plain holding that the Committees demonstrated actual success on the merits of their claim. There is no way of reconciling that success on the merits with any legal theory that would have left Mr. Isabel or any of the other October 11th Registrants ineligible to vote in the November 2016 Election.

Yet the Secretary persists in arguing (at 4) that because the she "deemed" Mr. Isabel ineligible, he somehow was. This audacious theory would use her very violation of state and federal law to immunize her unlawful conduct from liability. Courts have consistently rejected other similar attempts. *See, e.g., Lawrence v. Reed*, 406 F.3d 1224, 1231–32 (10th Cir. 2005) (McConnel, J.) (officers cannot rely on clearly unconstitutional ordinance authorizing seizure of derelict vehicles to immunize unlawful conduct); *United States v. Robeles-Ortega*, 348 F.3d 679, 683-85 (7th Cir. 2003) (holding that officers cannot use their unlawful act as the basis for an inference of consent); *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988) (holding that neither a prosecutor's decision to charge, a grand jury's decision to indict, nor the prosecutor's decision to proceed to trial shields a "police officer who deliberately supplied misleading information that influenced the decision."); *Chartis Specialty Ins. Co. v. Aqua Scis. Engineers, Inc.*, No. 11-CV-03669-JST, 2014 WL 2730442, at *5 (N.D. Cal. June 16, 2014) ("[A]s a matter of public policy, a defendant 'cannot be insulated from personal liability by the very act of professional negligence that subjects him to liability.'").

Here, the law was clear. Plaintiff's registration was timely, regardless of the Secretary's refusal to follow the law.

12

### B. The Committees' Delay in Seeking Equitable Relief Does Not Prevent Mr. Isabel's Suit for Damages.

"To be entitled to a permanent injunction, a plaintiff must demonstrate: (1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are inadequate; (4) that the balance of hardships justify a remedy in equity; and (5) that the public interest would not be disserved by a permanent injunction." 2016 Opinion at *5 (quoting *Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Relations*, 730 F.3d 1024, 1032 (9th Cir. 2013)). This Court held that the Committees "met the first requirement for permanent injunction" but denied injunctive and declaratory relief, because the Committees waited too long to obtain injunctive or declaratory relief, and a "federal court cannot lightly interfere with or enjoin a state election." 2016 Opinion at *18 (quoting *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003)).

The Secretary misinterprets this holding as "preclud[ing] the relief the Committees sought, which was to have their [sic] votes counted." Reagan Mot. at 14. But the Committees' delay has nothing to do with Mr. Isabel's rights. Mr. Isabel sues under § 1983 for damages, which are a remedy at law not equity. The "remaining factors" determining entitlement to a permanent injunction, therefore, are irrelevant, as are the Committees' laches.[5]

### C. The *De Minimis* Nature of the Defendants' Violation Was Relevant in the 2016 Litigation But Is Not Relevant Here.

The Secretary misconstrues the 2016 Opinion's statement that the October 11th Registrants "could have registered in time for the general election, but unfortunately did

---

[5] Courts have thus consistently "held that laches is inapplicable to claims seeking only monetary damages, including Section 1983 claims for monetary damages only." *Acasio v. Lucy*, No. 14-CV-04689-JSC, 2017 WL 1316537, at *16 (N.D. Cal. Apr. 10, 2017); *Wyler Summit P'ship v. Turner Broad. Sys.*, 235 F.3d 1184, 1193-94 (9th Cir. 2000) (holding that breach of contract claim seeking money damages was an action at law that precluded defense of laches).

not do so." It is true that the Court concluded, because some registrants could *probably* have registered earlier, the *de minimis* burden of leaving them off of the voter rolls did not outweigh the burden of redistributing election preparation resources on the eve of a major election. Again, however, that holding on the relative *equities* of the injunctive and declaratory relief sought by the Committees had no bearing on the *merits* of their claim. A fortiori, it has no bearing on the merits of Mr. Isabel's. Whether Mr. Isabel could have registered to vote on or before October 10, 2016, the Defendants' conduct injured him by: (1) requiring that he cast a provisional ballot instead of a regular ballot, and (2) failing to count his lawful vote in the 2016 November Election.[6]

### D. The Secretary's Conduct Harmed Mr. Isabel.

The Secretary does not argue, nor could she, that Mr. Isabel was not harmed as a result of her conduct. Compl. ¶¶ 60, 65, 71; *see Reynolds v. Sims*, 377 U.S. 533, 555 (1964) (qualified voters have the "right to cast their votes and have them counted"); *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1257 (N.D. Fla. 2016) ("Because those aspiring eligible voters could not register, they could not vote in the upcoming election. As a result, Florida's statutory framework completely disenfranchises thousands of voters, and amounts to a severe burden on the right to vote."). Moreover, the cases cited by the Secretary (at 10–12), *Barilla* and *Rosario*, upheld *properly set* voter registration deadlines. Those cases, however, do not stand for the proposition that *improperly set* voter registration deadlines cannot disenfranchise or harm a voter. If that were so, the

---

[6] Although not dispositive of other class members claims, it is worth noting that the Court's conclusion in regard to whether voters could have registered before the incorrect October 10, 2016 deadline was based on the limited discovery available in the context of expedited proceedings and applied only to most of the October 11th Registrants. 2016 Opinion at *10 (recognizing that "neither party has had the benefit of discovery"). Here, the Complaint plausibly alleges facts sufficient from which to infer that Mr. Isabel could not have registered before he did. Compl. ¶8 (noting that Mr. Isabel registered to vote in Arizona within days of moving to Arizona to serve as an officer in the Phoenix Police Department).

Defendants could have set the deadline 60 days earlier than they did and voters would have had no recourse. That cannot be the case.

## V. CONCLUSION

For the foregoing reasons, the Secretary's Motion to Dismiss should be denied in its entirety.

RESPECTFULLY SUBMITTED this 7th day of January, 2019

By: *s/ Spencer G. Scharff*
Spencer G. Scharff
SCHARFF PLC

&

Nathan Fidel
MILLER, PITT, FELDMAN & MCANALLY P.C.

*Attorneys for Plaintiff*

David Isabel

**CERTIFICATE OF SERVICE**

      I hereby certify that on January 7, 2019, I electronically transmitted the above document to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*s/ Spencer G. Scharff*