Mark Brnovich
Attorney General
Firm Bar No. 14000

Stephanie Elliott (030872)
Jeremy Horn (024707)
Joseph E. La Rue (031348)
Kara M. Karlson (029407)
Assistant Attorneys General
2005 N. Central Avenue
Phoenix, AZ  85007
Telephone (602) 542-5025
Facsimile (602) 542-4385
stephanie.elliott@azag.gov
jeremy.horn@azag.gov
joseph.larue@azag.gov
kara.karlson@azag.gov
AdminLaw@azag.gov

*Attorneys for Defendant Michele Reagan,
Arizona Secretary of State*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| David Isabel, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Michele Reagan, in her individual capacity; Maricopa County; Adrian Fontes, in his official capacity as Maricopa County Recorder,<br><br>Defendants. | Case No: 2:18-cv-03217-DWL<br><br>**DEFENDANT REAGAN'S REPLY IN SUPPORT OF HER MOTION TO DISMISS**<br><br>**(Oral Argument Requested)** |

Plaintiff's response to Defendant Reagan's Motion to Dismiss (Doc. 37) needlessly complicates the legal issues in an attempt to obfuscate his failure to state a claim.  However, the one thing made clear in Plaintiff's Response is that his entire claim

is rooted in the allegation that he was disenfranchised, suffered injury, and therefore deserves compensatory and punitive damages. Defendant Reagan does not attack a strawman—but rather, the centerpiece of this lawsuit which is dismantled by Supreme Court and Ninth Circuit precedent that voter registration deadlines do not disenfranchise voters. From the erroneous starting point that he was disenfranchised by the October 10, 2016 voter registration deadline, Plaintiff advances the untenable conclusion that he is entitled to money damages to compensate him for Defendant Reagan's conduct—setting the voter registration deadline. Yet, the statutes under which he seeks compensatory damages, NVRA and HAVA, cannot provide him with such relief. Regardless of whether NVRA may be enforced via 42 U.S.C. § 1983, Congress did not authorize compensatory or punitive damages as a remedy. Moreover, Judge Logan's Order did not change the requirements of HAVA—that a state must count *valid* provisional votes—nor did the Order transform Plaintiff into an eligible voter. Plaintiff registered to vote one day after the deadline. Plaintiff was not eligible to vote in the 2016 election. Judge Logan's Order did not change that, and Plaintiff has failed to state a claim for monetary damages.

Plaintiff's Response distorts the applicable law and Judge Logan's Order and only underscores that he has not stated a claim. Accordingly, this Court should grant Defendant Reagan's Motion.

**I.     PLAINTIFF WAS NOT DISENFRANCHISED BY THE 2016 VOTER REGISTRATION DEADLINE.**

The Supreme Court and the Ninth Circuit have each held that voter registration deadlines do not disenfranchise voters. *Rosario v. Rockefeller*, 410 U.S. 752 (1973); *Barilla v. Ervin*, 886 F.2d 1514 (9th Cir. 1989). This Court followed precedent when it decided *Ariz. Democratic Party v. Reagan*, No. CV-16-03618-PHX-SPL, 2016 WL 6523427, (D. Ariz. Nov. 3, 2016) ("2016 Order"), a case with nearly identical issues to this one. (Doc. 33 at 13.) Plaintiff does not address *Rosario* and *Barilla*, other than to suggest, in cursory fashion, that they do not apply because they concerned "properly set"

1  deadlines. (Doc. 37 at 14-15.) This is an incorrect reading of the cases. *Rosario* and
2  *Barilla* hold that registration deadlines do not disenfranchise voters because they do not
3  function as a total ban on the ability to register to vote, but are merely a requirement that
4  voters take certain actions within a prescribed time. *Rosario*, 410 U.S. at 757; *Barilla*,
5  886 F.2d at 1524-25. The holdings of both cases directly refute Plaintiff's claim that he
6  was disenfranchised by the 2016 voter registration deadline.

7  Moreover, in his cherry-picking of the 2016 Order, Plaintiff ignores that even
8  though the Court stated that the deadline should have been set on October 11, it also
9  noted that "[a]ssuming that there was [a] demonstrable number of individuals who did
10 not register to vote on October 10, 2016 because it fell on a holiday, **those voters cannot**
11 **be said to have been disenfranchised by the Secretary's deadline**." 2016 Order at *9
12 (emphasis added). Plaintiff is one of "those voters" referred to in the 2016 Order that
13 "cannot be said to have been disenfranchised by the Secretary's deadline." *Id.* Arguing
14 now that he is entitled to compensatory damages because he was disenfranchised directly
15 contravenes the Court's statement in the 2016 Order. Plaintiff has not alleged that he
16 was somehow unable to or prevented from registering within the set deadline. Just as the
17 plaintiffs in *Rosario* and *Barilla,* and just as stated in the 2016 Order, Plaintiff was not
18 disenfranchised, but rather a victim of his own failure to timely register.

19 **II.    PLAINTIFF WAS NOT ELIGIBLE TO VOTE IN THE 2016 ELECTION.**

20 Plaintiff implies that the 2016 Order changed the voter registration deadline to
21 October 11, and asserts that Defendant Reagan was obligated to count any provisional
22 ballots that were cast in the November 8, 2016 election by voters who, like Plaintiff,
23 failed to register by the advertised voter registration deadline. (Doc. 37 at 11-12.) This
24 Court should reject Plaintiff's attempt to expand the reach of the 2016 Order.[1]

---

[1] Plaintiff claimed that the Court "did not read the Committees' motion to request a declaration of the eligibility of such voters under state and federal law." (Doc. 37 at 11.) In fact, that is exactly how the Court read the Committees' motion. In footnote 15 of the 2016 Order, cited by Plaintiff, the Court states "The Committees seek declaratory judgment only with regard to the eligibility of Arizona voters who submitted valid voter

3

1    In the 2016 case, the Committees sought an order that Defendant Reagan must count the provisional ballots of those who registered on October 11, the day after the set voter registration deadline. 2016 Order at *4. The Court, however, specifically declined to require that late registrants' votes be counted. *Id*. at *17. In declining to grant that relief, the Court in effect, declined to alter the October 10 deadline, despite its holding that the state statutes regarding deadlines had been misapplied. *See id*. Indeed, if the Court retroactively held that October 11 was the registration deadline, it would be inconsistent and illogical to then decline to order Defendant Reagan to count the votes of October 11 registrants. Similarly, the Court did not rule on whether A.R.S. § 1-303 required Defendant Reagan to extend the deadline. *Id*. at *16.

Plaintiff's response asserts and indeed turns on the premise that Plaintiff was timely registered and Defendant Reagan was required to count his provisional ballot—a premise that Judge Logan rejected. Put simply, regardless of the ex post facto ruling that the deadline should have been October 11, Judge Logan correctly held that requiring late registrants' ballots, including Plaintiff's, to be counted in the 2016 election would have interfered with and encumbered the election. *Id*. at *18. It is impossible to reconcile that holding with Plaintiff's request to now subject Defendant Reagan to liability for money damages for not taking the very action that was already litigated and determined to be unduly burdensome to the election process. Therefore, Plaintiff fails to state claims under the U.S. Constitution or HAVA, and his second and third causes of action must be dismissed.

### III. PLAINTIFF IS NOT ENTITLED TO RELIEF UNDER NVRA.

Competing case law regarding the availability of 42 U.S.C. § 1983 as a remedy for a violation of NVRA is a red herring. Despite the case law offered by Plaintiff, later courts have held that NVRA cannot be enforced via § 1983. *Nat'l Coal. for Students with Disabilities Educ. and Legal Defense Fund v. Allen*, 961 F. Supp. 129, 132 (E.D.

---

registration of October 11, 2016, to vote in the general election, which as follows, is precluded on equitable grounds." 2016 Order at *16 n.15.

4

Va. 1997) (holding "the NVRA provides a detailed method of enforcement which is exclusive, and as a result, private persons cannot support a Section 1983 claim based upon an alleged violation of the NVRA."), *overruled on other grounds by Nat'l Coal. for Students with Disabilities Educ. and Legal Defense Fund v. Allen*, 152 F.3d 283 (4th Cir. 1998); *See also Ass'n of Cmty. Org. for Reform Now v. Fowler*, 178 F.3d 350, 367 n. 11 (5th Cir. 1999) (rejecting a plaintiff's § 1983 claim for an alleged violation of NVRA and holding that NVRA provides an exclusive remedy for violations of its own terms). This Court need not resolve the split in district court opinions to dismiss Plaintiff's claims because regardless of whether § 1983 can be used to obtain *injunctive* relief, it is clear that Congress did not intend to provide for compensatory or punitive damages through NVRA. Contrary to Plaintiff's assertions, the congressional committee reports state exactly that in response to concerns that NVRA would subject states to monetary judgments for violations: "It does not. Corrective action in the form of declaratory and injunctive relief . . . **are the available civil remedies**." H.R. Rep. No. 103-9, at 20 (1993) (emphasis added).

"The crucial consideration is what Congress intended." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120 (2005) (quoting *Smith v. Robinson*, 468 U.S. 992, 1012 (1984)).[2] "When the language of a statute does not clearly reveal congressional intent, it is appropriate to turn to legislative history." *U.S. v. Hunter Eng'r & Constructors, Inc.*, 789 F.2d 1436, 1439 (9th Cir. 1986) (citation omitted). In examining legislative history to look for Congressional intent, courts have even examined the wording of speeches by individual representatives and senators when debating the legislation. *See Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 26-37 (1977) (examining

---

[2] In *Smith v. Robinson*, the Court analyzed specifically whether a statutory scheme provided by Congress precluded reliance on § 1983 as a remedy for a separate constitutional violation. 468 U.S. at 1008-09. Specifically, the plaintiff in *Smith* brought a separate equal protection claim related to violations of the Education of the Handicapped Act. *Id*. In contrast, here, Plaintiff attempts to use § 1983 to obtain a remedy for a violation of NVRA which is not provided for in the statute.

testimony given by figures before Congressional committees on a particular bill and speeches made on the floor of Congress debating its passage to determine whether Congress intended to allow a private right of action).

All of the evidence here illustrates Congress' intent for NVRA's built-in enforcement mechanisms to be exclusive—the purpose of the statute, the specific relief delineated in the statute that expressly did not include compensatory or punitive damages, and the clear Congressional record that compensatory damages were not to be available for NVRA violations. The language from the Congressional committees cited in Defendant Reagan's Motion to Dismiss is precisely the explicit language courts look to in legislative history to determine Congressional intent. That intent is clear – monetary damages were explicitly not intended to be available for NVRA violations. Finding that monetary damages for NVRA violations are available through a § 1983 claim would simply be an end-run around Congress' clear intent.

Plaintiff cites *Condon v. Reno*, 913 F. Supp. 946 (D.S.C. 1995), and *Association of Community Organizations for Reform Now v. Miller*, 912 F. Supp. 976, 982 (W.D. Mich. 1995), for the proposition that § 1983 actions are authorized for NVRA violations. (Doc. 37 at 6-7.) But, the relevant inquiry here is whether NVRA authorizes compensatory and punitive damages. Neither of the cases cited in Plaintiff's response supports that proposition. First, the district court in *Condon* simply notes that the private plaintiffs sued South Carolina under NVRA, as well as § 1983, alleging only NVRA violations and seeking injunctive relief only. 913 F. Supp. at 960. In fact, the *Condon* court did not analyze or rule on whether § 1983 is available for NVRA violations or if compensatory damages are available as a remedy for NVRA violations. *See id.* Conflating this general and conspicuous silence on the issue with a holding that 1) § 1983 provides a remedy for a NVRA violation and 2) that monetary damages are available is a dubious conclusion, particularly since it does not appear that any of the parties challenged it or raised it as a significant issue (or an issue at all).

The *Miller* court's analysis on this issue is similarly perfunctory and equally inapplicable here. As in *Condon*, plaintiffs in *Miller* sued under both NVRA and § 1983, but were only seeking injunctive relief and not compensatory or punitive damages. *Miller*, 912 F. Supp. at 988. Thus, there was no pressing need on the part of the *Miller* court for extensive analysis into Congressional intent and whether the limited forms of relief Congress provided for in NVRA were compatible with plaintiffs' request for relief under § 1983, because if they prevailed, the plaintiffs would have been entitled to the injunctive relief they sought under NVRA anyway.

The court in *Miller* did not analyze any specific statutory language in NVRA, the stated purpose of NVRA, whether this purpose was consistent with a claim for compensatory damages under § 1983, the expressly limited types of damages available under NVRA, or anything in the Congressional Record that indicated Congress' intent. The court in *Miller* specifically and simply stated that "[d]efendants have come forth with no evidence whatsoever that other provisions of the statute support their claim that a § 1983 action based on the NVRA is barred." 912 F. Supp. at 982. But again, Plaintiff here seeks compensatory and punitive damages, not injunctive relief. The question is not whether Plaintiff can seek injunctive relief under NVRA via a § 1983 action as the plaintiffs in *Miller* and *Condon* did, but rather, whether Plaintiff is entitled to compensatory damages for alleged violations of NVRA. Moreover, Defendant Reagan has provided evidence illustrating that awarding compensatory damages for NVRA violations is contrary to the spirit of the statute and intent of Congress. (Doc. 33 at 6-9.) Furthermore, the rulings made in *Allen* and *Fowler,* precluding a § 1983 action for under NVRA entirely, both post-date the *Miller* and *Condon* decisions and indicate a strong disagreement among and within different jurisdictions.[3]

Although district courts may be divided on whether a plaintiff can bring a § 1983 action to vindicate a violation of NVRA, Plaintiff has provided no case law, or any other

---

[3] *Allen*, *Fowler*, *Condon,* and *Miller* are all decisions outside of this jurisdiction and thus none are binding on this Court.

authority, holding that despite all indications to the contrary, compensatory or punitive damages are available under NVRA.[4]

## IV. CONCLUSION

Plaintiff alleges that he was timely registered and eligible to vote but that he was disenfranchised by the voter registration deadline and is entitled to compensatory and punitive damages. He is wrong on every account. He was not timely registered and therefore ineligible to vote and cannot be disenfranchised by a voter registration deadline in any event. Nor is he entitled to compensatory or punitive damages under NVRA. Plaintiff's Complaint fails to state a claim upon which relief may be granted, and it must be dismissed.

Respectfully submitted this 14th day of January, 2019.

Mark Brnovich
Attorney General

s/ Stephanie Elliott
Stephanie Elliott
Jeremy Horn
Joseph E. La Rue
Kara M. Karlson
Assistant Attorneys General
*Attorneys for Defendant Michele Reagan, Arizona Secretary of State*

---

[4] Plaintiff's heavy reliance on 52 U.S.C. § 20510(d) is misplaced. While Plaintiff tries to distinguish this section of NVRA from other "savings clauses" which did not preserve § 1983 claims, it is not so different. The difference between the "so-called" savings clause of the Telecommunications Act which provides that the Act does not "modify, impair, or supersede" other laws and the section of NVRA which provides that the "rights and remedies . . . are in addition to all other rights and remedies provided by law" is negligible. *See Palos Verdes*, 544 U.S. at 125-26 (quoting TCA § 601(c)(1), 47 U.S.C.A. § 152 note.); *see also* 52 U.S.C. § 20510(d). The savings clause of the Federal Water Pollution Control Act bears a similar comparison and was also held to preclude a § 1983 claim. *See Middlesex Cty. Sewerage Auth. V. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 16 n.26 (1981) ("[N]othing in the citizen-suit provision 'shall restrict any right which any person . . . may have under any statute or common law to seek enforcement . . . or to seek any other relief.'") Moreover, in construing this savings clause, the Court in *Sea Clammers* looked to legislative history to determine Congress's intent. *Id.* at 17-18.

8

# CERTIFICATE OF SERVICE

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following, this 14th day of January, 2019:

Spencer G. Scharff
Scharff PLC
502 W. Roosevelt St.
Phoenix, AZ 85003
spencer@scharffplc.com

Nathan Fidel
Miller, Pitt, Feldman & McAnally, P.C.
2800 N. Central Ave, Suite 840
Phoenix AZ 85004-1069
Nfidel@mpfmlaw.com

*Attorneys for Plaintiff*

M. Colleen Connor
Talia J. Offord
Maricopa County Attorney
Civil Services Division
222 N. Central Avenue, Suite 1100
Phoenix, AZ 85004
connorc@mcao.maricopa.gov
offordt@mcao.maricopa.gov
*Attorneys for Maricopa County Defendant*


s/ Elizabeth Morales

#7594888