Timothy A La Sota, AZSBN # 020539
**TIMOTHY A. LA SOTA, PLC**
2198 E. CAMELBACK RD., SUITE 305
PHOENIX, ARIZONA 85016
TELEPHONE: (602) 515-2649
tim@timlasota.com
*Attorney for Defendant Michele Reagan*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| David Isabel, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Michele Reagan, in her individual capacity; Maricopa County; Adrian Fontes, in his official capacity as Maricopa County Recorder,<br><br>Defendants. | Case No. 2:18-cv-03217-DWL<br><br>**DEFENDANT MICHELE REAGAN'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Honorable Dominic W. Lanza<br><br>(oral argument requested) |

Defendant Michele Reagan moves that this Court dismiss Plaintiff's First Amended Complaint filed June 27, 2019 (Doc. # 60) in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim upon which relief may be granted. This Motion is supported by the Memorandum of Points and Authorities below.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   HAVA DOES NOT PROVIDE A BASIS FOR PLAINTIFF'S COUNT II CAUSE OF ACTION**

Plaintiff first amends his complaint in an attempt to revive Count II, which is based on HAVA.  Plaintiff claims that "HAVA expressly precludes determinations based on 'State requirements [that are] inconsistent with the [NVRA]'" and that "[t]he October 10, 2016 Policy is a State requirement inconsistent with the NVRA."  (Proposed Amended Complaint ¶¶ 62-64).  Plaintiff quotes 52 U.S.C.A. § 21084 in support.

52 U.S.C.A. § 21084, which is titled "Minimum Requirements", states:

> The requirements established by this subchapter are minimum requirements and nothing in this subchapter shall be construed to prevent a State from establishing election technology and administration requirements that are more strict than the requirements established under this subchapter so long as such State requirements are not inconsistent with the Federal requirements under this subchapter or any law described in section 21145 of this title.

Plaintiff's interpretation would turn congressional intent on its head.  This Court found in its Order granting the Secretary's Motion to Dismiss that:

> Isabel's interpretation of the HAVA would create a federal cause of action to challenge a state or local election official's application of state law whenever a provisional ballot has been cast.  If Congress had intended to effectuate such an enormous shift in the balance of power related to elections, it presumably would have said so explicitly.

(Order granting the Secretary's Motion to Dismiss, p. 17).

Instead of the explicit way Congress would have acted had intended such a shift in the balance of power *vis a vis* administration of elections, Plaintiff finds such intent in a savings clause with a cross reference.  But the savings clause seems to be nothing more than garden variety language confirming the ability of a state to require more than what is

2

required by federal law.  *See, e.g., Williamson v. General Dynamics Corp.*, 208 F.3d 1144, 1151 (9th Cir. 2000)(noting the Fair Labor Standards Act's savings clause permitting states to enact stricter wage and hour laws).

Plaintiff argued in its reply to Defendant's Response to its Motion to Amend that unless the savings clause were interpreted to support his cause of action the cross reference to section 21145 would be rendered superfluous.  This is not true, and ignores the plain structure and purpose of the savings clause.

The savings clause authorizes a state to exceed the requirements of the HAVA.  In authorizing state election administration systems that differed (i.e., essentially if the system were better than that required by HAVA) from the requirements of HAVA, Congress apparently felt the need to ensure that this authorization in federal law could not be used as a defense for failing to adhere to the NVRA or any of the other laws listed in section 21145.  There is nothing superfluous about that interpretation—Congress was seeking to foreclose the possibility of such unintended consequences, and included the cross reference to ensure that the savings clause could not result in sanctioning a course of action by a state that failed to adhere to the NVRA or the other acts listed.  The cross reference to section 21145 in the HAVA clearly serves its own purpose, or has the "independent meaning" that courts have described as the opposite of superfluous.  *See, e.g., Hooks v. Kitsap Tenant Support Services, Inc.*, 816 F.3d 550, 560 (9th Cir. 2016).

In the face of this clear indication of congressional intent, Plaintiff offers a contorted, backhanded way in which, under their theory, Congress intended to effect such an enormous shift in the balance of power in administering elections in favor of the federal government.  This simply does not make logical sense, and Plaintiff's proferred reading of the HAVA must be

rejected.  *Cf. Pension Ben. Guar. Corp. v. LTV Corp.*, 110 S.Ct. 2668, 2676, 496 U.S. 633, 647 (U.S. 1990)("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress…")

In addition, the Supreme Court has stated that its "preference for avoiding surplusage constructions is not absolute" and, depending on the statute interpreted, "rigorous application of that canon" may not be "a particularly useful guide to a fair construction."  *King v. Burwell*, 135 S.Ct. 2480, 2483, 192 L.Ed.2d 483 (2015).  Plaintiff's reliance on the savings clause is misplaced.

Fundamentally, the savings clause does not change the fact that "HAVA is quintessentially about being able to *cast* a provisional ballot."  *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 576 (6th Cir. 2004) Or that "[t]he only subsection of the HAVA that addresses the issue of whether a provisional ballot will be counted conspicuously leaves that determination to the States." *Id.* at 577.

Isabel's dispute remains "with the *propriety* of the Secretary's determination regarding his eligibility to vote under Arizona state law".  (Order granting the Secretary's Motion to Dismiss, p. 16).  As such, "HAVA is not the proper vehicle for asserting his claim."  (*Id.*) (quoting *Sandusky*, 387 F.3d at 578)("HAVA does not require that any particular ballot, whether provisional or 'regular,' must be counted as valid"); *Ron Barber for Cong. v. Bennett*, 2014 WL 6694451, *8 (D. Ariz. 2014) ("HAVA does not contain language that requires that the provisional votes be counted; it is directed to

providing provisional votes") and *Hood*, 342 F. Supp. 2d at 1080 ("HAVA certainly does not require the counting of the vote of . . . one who registers too late.")).

There is an additional reason that Plaintiff's purported interpretation must be rejected. This Court already found that NVRA, which permits private actions for injunctive and declaratory relief, does not provide a basis for monetary damages. HAVA is even more explicit in its limitations about what type of cause of action it will allow. "The HAVA does not include a private right of enforcement. By its text, the HAVA only allows enforcement via attorney general suits or administrative complaint." *American Civil Rights Union v. Philadelphia City Commissioners*, 872 F.3d 175, 184–85 (3rd Cir. 2017). The *American Civil Rights Union* court went on to add that "the fact that the NVRA provides for a private right of action while the HAVA does not clearly indicates Congress's intent to limit HAVA's enforcement mechanism to preclude a private suit." 872 F.3d at 185.

This suit, for money damages, fails for this additional reason.

The Plaintiff was permitted to cast a provisional ballot. (Amended Complaint, ¶ 35). Beyond that, Plaintiff was entitled to have his ballot counted only if a state official "determine[d] that the individual is eligible under State law to vote." Section 302(a)(4). The determination that Plaintiff <u>was</u> eligible to vote was not made because, no matter how many times Plaintiff claims he was eligible to vote in the 2016 general election, he was <u>not</u>. He missed the deadline to register. An effort was made to have a court order that this deadline be changed, but it failed, and the deadline remained October 10, 2016.

## II. PLAINTIFF'S PROPOSED AMENDMENTS TO COUNT III DO NOT STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Plaintiff's amendments with regard to Count 3 of his Complaint do not produce a claim upon which relief may be granted either. In attempting to state a claim upon which relief may be granted, he quotes a 1941 Supreme Court case, *United States v. Classic*, 313 U.S. 299, 314–15 (1941).

The Plaintiff also seems to think that the Secretary's response to the Motion to Amend provides an opening for his cause of action. This is not the case. To begin with, the issue of what Plaintiff's rights would be were he actually eligible to vote in the 2016 election are irrelevant because he was not eligible to vote. The registration deadline was October 10, 2016, and Plaintiff registered on October 11, 2016. Even the Plaintiff slips up on this point. He concedes one of the fundamental flaws in his claims in his own Amended Complaint when he states that "<u>all</u> of the provisional ballots…were cast by voters, who <u>should have been</u> eligible to vote under state law…" (First Amended Complaint, ¶ 61)(Emphasis added).

Should have been eligible and eligible are two different things. Even if this Court were to assume that *Classic*[1] provides Plaintiff a basis for proceeding under Article I, Section 2 of the Constitution, it does not help Plaintiff in this instance because he was not a "qualified voter" in the 2016 general election. And this Court also already found that "Even if the Secretary violated state and/or federal law when setting the registration deadline, Isabel had ample opportunity to register to vote and therefore wasn't

---

[1] 313 U.S. at 299.

6

disenfranchised. *Rosario* and *Barilla* are controlling." (Order granting the Secretary's Motion to Dismiss, p. 21).

If the election were held at a later date, or if the Court in *Arizona Democratic Party v. Reagan*[2], had ordered the deadline be changed, Plaintiff would have been eligible to vote and his vote would have counted. But that is not what happened, and Plaintiff was not eligible to vote. And nothing about a voter registration deadline, widely publicized long in advance of the deadline, infringes on that right. *Rosario v. Rockefeller*, 410 U.S. 752 (1973); *Barilla v. Ervin*, 886 F.2d 1514, 1525 (9th Cir. 1989). Plaintiff does not allege that he was misled into thinking the deadline was at a later date or he could not have registered by the October 10, 2016 deadline. In this Court's words, "Isabel's inability to vote was caused by [his] own failure to take timely steps to effect [his] enrollment." (Order granting the Secretary's Motion to Dismiss, p. 22).

It is true that on the irrelevant point of what Plaintiff's rights would have been if he had been properly registered in time to vote in the 2016 election, the Secretary's characterization of the law in its Response to the Motion to Amend was not completely accurate. Strictly in regard to the Qualifications Clause, which the Plaintiff bases Count III on, a properly registered elector who lawfully casts a ballot has the right to have that elector's vote for Congress counted, if the person was permitted to vote in the state's legislative elections. That is as far as the Qualifications Clause goes[3]. *See, e.g., Tashjian*

---

[2] 2016 WL 6523427, at *18 (D.Ariz., 2016)
[3] As the Court noted, state law governs the counting of provisional ballots and absent the inconceivable situation in the modern era where a person was given a state election ballot but denied a federal one, that is the appropriate venue for a person who believes he or she is aggrieved by a failure to count a provisional ballot, and there are avenues for such timely sought relief.

7

*v. Republican Party of Connecticut*, 107 S.Ct. 544, 556, 479 U.S. 208, 229 (U.S. 1986)

Mr. Isabel was deemed ineligible to vote for both state and federal elections, so the Qualifications Clause could not be implicated. *Id.* It is up to Plaintiff to state a viable basis for proceeding, and under the undisputed facts of this case, the Qualifications Clause does not provide it.

## IV.  CONCLUSION

The Amended Complaint does not change a thing. Plaintiff remains without a claim upon which relief may be granted. The Secretary respectfully requests that it be dismissed in its entirety.

RESPECTFULLY SUBMITTED this 5th day of July, 2019.

**TIMOTHY A. LA SOTA, PLC**

By:   /s/ Timothy A. La Sota
Timothy A. La Sota, AZSBN 020539
2198 East Camelback Road, Suite 305
Phoenix, Arizona 85016
Telephone: (602) 515-2649
Email: tim@timlasota.com
Attorney for Defendant Michele Reagan

8

# CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2019, I electronically transmitted the above document to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*s/ Timothy A. La Sota*