Spencer G. Scharff, No. 028946
SCHARFF PLLC
502 W. Roosevelt Street
Phoenix, Arizona 85003
(602) 739-4417
spencer@scharffplc.com

Nathan Fidel, No. 025136
MILLER, PITT, FELDMAN & MCANALLY P.C.
2800 N. Central Ave, Suite 840
Phoenix AZ 85004
(602) 266-5557
nfidel@mpfmlaw.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Isabel, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>Michele Reagan, in her individual capacity; Maricopa County; Adrian Fontes, in his official capacity as Maricopa County Recorder,<br><br>      Defendants. | No. 2:18-cv-03217<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO MICHELE REAGAN'S MOTION TO DISMISS [Doc. 61] AND THE COUNTY DEFENDANTS' JOINDER THEREIN [Doc. 63]**<br><br>Hon. Dominic Lanza |

  Plaintiff David Isabel ("Plaintiff") respectfully submits this Opposition to Defendant Michele Reagan's Motion to Dismiss [Doc. 61] and the County Defendants' Joinder in Defendant Reagan's Motion [Doc. at 63] (herein after referred to collectively as "Defendants' Motion").

## I. RELEVANT PROCEDURAL HISTORY

On October 9, 2018, Plaintiff filed a Class Action Complaint against Defendants. [Doc. 1.] On November 27, 2018, the County Defendants filed a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1). [Doc. 32.] On November 30, 2018, Defendant Reagan filed a motion to dismiss for failure to state a claim under Rule 12(b)(6). [Doc. 33.] After the motions were fully briefed, the Court heard oral arguments on June 5, 2019. [Doc. 50.] On June 7, 2019, the Court entered an order denying the County Defendants' motion to dismiss for lack of jurisdiction, but granting Defendant Reagan's motion to dismiss for failure to state a claim. [Doc. 54.] Notably, the Court granted dismissal of Plaintiff's Second and Third Causes of Action on grounds not raised by Defendants. [*See* Doc. 54 at 16 ("Both parties miss the mark."); *id.* at 20 ("The parties ignore this issue in their moving papers.").]

On June 27, 2019, the Court granted Plaintiff's Motion for Leave to File a First Amendment Complaint ("FAC"). [Doc. 59.] Plaintiff filed the FAC on the same day. [Doc. 60.] The FAC contains three substantive amendments: (i) it addresses the Court's interpretation of HAVA by alleging an alternative violation; (ii) clarifies that Count III of the Complaint encompasses Mr. Isabel's claim that § 1983 codifies the common-law cause of action for deprivation of the fundamental right to vote, long established by the Supreme Court; and (iii) limits the claims for punitive damages to Defendant Reagan. On July 5, 2019, Defendant Reagan filed a Motion to Dismiss. [Doc. 61.] On July 8, 2019, the County Defendants joined in Defendant Reagan's Motion without raising any new or individualized arguments. [Doc. 63.][1]

---

[1] In light of this Court's prior orders [Doc. 54 (dismissing original complaint) & Doc. 59 (granting leave to amend)], this Opposition focuses on the issues unique to the FAC. [Doc. 60.] Plaintiff, however, reserves his right to present on appeal the arguments that he advanced, but were rejected by this Court, in his Oppositions [Docs. 36 & 37] to Defendants' initial motions to dismiss, including arguments advanced in support of the FAC's First Cause of Action (NVRA). Those arguments are therefore incorporated by reference as if presented herein, pursuant to LRCiv 7.1(d)(2).

For the reasons set forth below, Defendants' Motion should be denied.

## II. LEGAL STANDARD

In deciding a Rule 12(b)(6) motion, courts must accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiffs. *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1157 (9th Cir.), *opinion amended on reh'g sub nom.*, 868 F.3d 1048 (9th Cir. 2017). Thus, all reasonable inferences must also be drawn in plaintiff's favor. *Id.* (citing *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)).

Plaintiff respectfully notes that this Court's prior Rule 12(b)(6) Order strayed from this legal standard. For example, the facts alleged did not demonstrate that "Isabel had ample opportunity to register to vote," [Doc. 54 at 21]. If anything, the Court would need to draw *unreasonable* inferences in *Defendants'* favor to arrive at such a conclusion. *Cf.* FAC ¶ 8 (alleging that Plaintiff moved to Arizona on October 5, 2016). Moreover, the Court relied on facts that were not alleged. For example, the Court stated:

> The facts, as alleged by Isabel, show that the Secretary publicly set a voter registration deadline of October 10, 2016 and "adopted a policy that deemed invalid any ballot cast in the November 2016 Election by a voter who registered on October 11, 2016." (Doc. 1 ¶¶ 19, 22.)

[Doc. 54 at 22.] Yet, the original Complaint did not allege the October 10, 2016 Policy was *publicly* announced. Rather, the FAC—like the original Complaint—alleges that Defendants did *not* provide him with any notification regarding his purported ineligibility. FAC at ¶ 25. If anything, the facts as alleged and construed in the light most favorable to Plaintiff, indicate that official mailers sent to Plaintiff gave him the impression that he was *eligible* to vote in the November 2016 Elections. *See id.* at ¶¶ 26–27 (alleging that Defendants sent Plaintiff a mailer reminding him to vote in the November 2016 Election).

### III. PLAINTIFF PLAUSIBLY ALLEGES A VIOLATION OF A RIGHT SECURED BY THE CONSTITUTION (THIRD CAUSE OF ACTION).

In dismissing Plaintiff's Complaint, the Court granted leave to assert a common law cause of action. [Doc. 54 at 22]. Upon reflection, Plaintiff concluded that it was not necessary to allege a separate federal common law cause of action, because § 1983 codifies that common law remedy, long established in the Supreme Court's jurisprudence. [Doc. 55 at 3]. The FAC therefore amends Plaintiff's third cause of action to emphasize this inclusion. Defendants move to dismiss the amended cause of action, arguing that Mr. Isabel was not eligible to vote without addressing Plaintiff's amendments.

To state a claim under § 1983, a plaintiff need only allege (1) the deprivation of a right secured by the federal Constitution or statutory law, and (2) that the deprivation was committed by a person acting under color of state law. *See Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Here, Plaintiff's Third Cause of Action sufficiently alleges that Defendants, acting under the color of state law, deprived him of his right to vote.

#### A. The Facts Alleged Demonstrate that Plaintiff Was a Qualified Arizona Voter on November 8, 2016.

Defendants' Motion represents their *fifth* opportunity—counting the June 5th oral argument—to explain to the Court why, despite Plaintiff's allegations to the contrary, he did *not* timely register. Instead, Defendants continue to assert, without any reasoned explanation or citation to law, that Plaintiff was ineligible to vote:

> To begin with, the issue of what Plaintiff's rights would be were he actually eligible to vote in the 2016 election are irrelevant because he was not eligible to vote. The registration deadline was October 10, 2016, and Plaintiff registered on October 11, 2016.

[Doc. at 61 at 6.]

If October 10, 2016 had not been a state and federal holiday, Defendants might be correct, *but* October 10, 2016 was a state and federal holiday—Columbus Day. FAC

4

¶¶ 15–16. As such, all registrations submitted on October 11, 2016 were, *as a matter of law*, filed on October 10, 2016. *See* A.R.S. § 1-303; *see also* Ariz. Att. Gen. Op. No. 58-74 (concluding that when the close of registration for a primary election fell on July 4th, A.R.S. § 1-303 instructs that "the registration of electors . . . may be performed on the next ensuing business day *with the effect as though performed on the appointed day*") (emphasis added).[2]  In other words, even if the October 10, 2016 "deadline" were not unlawful, Plaintiff has adequately alleged that, *as a matter of law*, he timely registered to vote in November 2016 Elections and was eligible and qualified to cast a ballot on November 8, 2016.[3]  *See, e.g., Ekweani v. Maricopa Cty. Sheriff's Office*, 2009 WL 976520, at *3 (D. Ariz. Apr. 9, 2009) ("Because the last day of the 180 day period for notice was February 18, 2008, the Presidents' Day holiday, plaintiffs' notices filed on the next business day, February 19, 2008, are timely.").[4]

Defendants' argument regarding the unexplained difference between "should have been eligible and eligible," [Doc. 61 at 6 (citing *Rosario v. Rockefeller*, 410 U.S. 752 (1973) and *Barilla v. Ervin*, 886 F.2d 1514, 1525 (9th Cir. 1989))], does not change the fact that Plaintiff has sufficiently alleged that he was eligible and qualified to vote in the

---

[2]  This position was clearly outlined in Plaintiff's previous filings. [*See, e.g.,* Doc. 37 at 10 ("Under the plain reading of A.R.S. § 1-303, the Secretary was required to treat all valid registration forms, including Plaintiff's, submitted on October 11th as if they were submitted on October 10th.").

[3]  Plaintiff is entitled to plead alternative or multiple theories of recovery on the basis of the same conduct on the party of a defendant. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

[4]  Application of holiday-deadline laws is hardly unique to Arizona. *See, e.g., Kalaeloa Ventures, LLC v. City & Cty. of Honolulu*, 143 Haw. 103, 108 (2018), *as corrected* (Nov. 14, 2018) (applying a nearly identical statute to find a filing timely where deadline fell on a Sunday and Monday was a holiday); *Orion IP, LLC v. Mercedes–Benz USA, LLC*, 485 F. Supp. 2d 745, 746–47 (E.D. Tex. 2007) (applying 35 U.S.C. § 21(b) to hold that a one-year deadline that fell on a Friday holiday was timely when filed on the following Monday).

November 2016 Election.  *See* FAC ¶ 71 ("Because all of the provisional ballots described herein were cast by qualified voters within the State of Arizona, the U.S. Constitution required Defendants to count their votes.").

### B. Defendants' Reliance on *Rosario* and *Barilla* Is Misplaced.

Defendants cite to *Rosario* and *Barilla* in support of their contention that a voter registration deadline cannot disenfranchise. [Doc. 61 at 7.] The holdings in those cases, however, are not applicable. First, unlike Plaintiff Isabel, the plaintiffs in both of those cases submitted *untimely* voter registrations and proceeded to challenge the validity of registration deadlines *simpliciter*. *See Rosario*, 410 U.S. at 755 (1973) (noting that plaintiffs submitted their registration forms three months after the registration deadline); *Barilla*, 886 F.2d at 1517 (9th Cir. 1989) (detailing that all plaintiffs registered or attempted to register "after the registration cutoff").

Second, and relatedly, the plaintiffs in both of those cases challenged the applicable voter registration deadline and contended that the deadlines unconstitutionally *burdened* their right to vote. *Rosario*, 410 U.S. at 760 ("[O]ur inquiry must be whether the particular deadline before us here is so justified."). Here, in contrast, Plaintiff does not challenge the constitutionality of Arizona's voter registration deadline. Rather, Plaintiff alleges that he *complied* with the relevant voter registration deadline. In other words, Plaintiff does not allege that his right to vote was merely burdened, but that it was denied outright. Under Defendants' reading of those cases, states would be free to throw out ballots of any voter who registers on the last day of the registration period because they could have registered sooner. Whether a voter could have registered earlier may be relevant under a balancing approach—weighing the burdens and the state's justifications. But such weighing of relative interests is not relevant in a case, such as Mr. Isabel's, alleging an outright denial.

Regardless, Defendants do not even proffer a single relevant, legitimate state interest justifying the October 10, 2016 Policy. *See Crawford v. Marion Cty. Election*

*Bd.*, 553 U.S. 181, 191 (2008) (holding that "[h]owever slight [the] burden may appear . . . it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation.") (internal citations omitted). Even if they had, it would be reversible error to accept Defendants' purported interests at the pleading stage without any evidentiary showing. *See Soltysik v. Padilla*, 910 F.3d 438, 448 (9th Cir. 2018) (reversing the district court's dismissal and holding that government defendants must make an evidentiary showing of its interest before a ballot regulation can be found justified under the Supreme Court's balancing test).

      **C.    Defendants Only Dispute the Qualifications Clause Violation, Effectively Conceding That They Violated the Fundamental Right to Vote Secured by the Constitution.**

Defendants fundamentally misapprehend the Third Cause of Action of the FAC. Defendants contend that Plaintiff's Third Cause of Action is based solely on the Qualifications Clause. [Doc. 61 at 7 ("Strictly in regard to the Qualifications Clause, which the Plaintiff bases Count III on . . . .").] But, as highlighted in Plaintiffs' Motion for Leave to Amend, Plaintiff amended his Third Cause of Action to allege a violation of his constitutional right to vote:

> Plaintiff's First Amended Complaint contains three substantive amendments: . . . (ii) clarifies that Count III of the Complaint is rooted in the Supreme Court's longstanding jurisprudence that the Constitution secures the right of qualified voters to have their ballots counted in federal elections, and encompasses Mr. Isabel's claim that § 1983 codifies the common-law cause of action for deprivation of the right to vote . . . .

[Doc. 55 at 2.] Although Article I, Section 2 of the Constitution still remains a basis for his Third Cause of Action, the FAC emphasizes that Article I, Section 2 is no longer the sole basis for his alleged constitutional deprivation. *Cf.* FAC at 14:12 ("Violation of the Right to Vote Secured by the U.S. Constitution").

The Supreme Court has consistently recognized the right to vote as a fundamental right secured by U.S. Constitution. *See, e.g.*, *Burdick v. Takushi*, 504 U.S. 428, 433

(1992) ("It is beyond cavil that voting is of the most fundamental significance under our constitutional structure.") (internal citations omitted); *Reynolds v. Sims*, 377 U.S. 533, 554 (1964) ("Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections."); *see also Crawford*, 553 U.S. at 210 (Scalia, J. concurring in the judgment) ("The Judiciary is obliged to train a skeptical eye on any qualification of that right."). Plaintiff's Third Cause of Action alleges that Defendants violated this constitutionally protected, fundamental right.

### D. Regardless, Defendants Also Violated Article I, Section 2.
#### 1. Defendants Violated Plaintiff's Right to Choose.

Although Defendants focus on the Qualifications Clause section of Article I, Section 2, it is the *right to choose* that the Supreme Court has held secures citizens' rights to cast a ballot and have that ballot counted. *United States v. Classic*, 313 U.S. 299, 314–15 (1941) ("Section 2 of Article I commands that Congressmen shall be *chosen* by the people of the several states by electors, the qualifications of which it prescribes. . . . Obviously included within the *right to choose*, secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted at Congressional elections. This Court has consistently held that this is a right secured by the Constitution.") (emphasis added). In fact, the Court's decision in *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986), differentiated the "fundamental purpose" of (1) Article I, Section 2 and (2) the Qualification Clause contained therein, and held that the right to choose is "[t]he fundamental purpose underlying Article I, § 2, cl. 1 . . ." *Id*. at 227 (quoting Article I, Section 2 with the Qualification Clause omitted via ellipsis); *cf. id*. at 229 (discussing "[t]he fundamental purpose of the *Qualifications Clauses* contained in Article I, § 2, and the Seventeenth Amendment . . . .") (emphasis added). As alleged in the FAC, Defendants violated Plaintiff's right to choose, secured by Artice I, Section 2, when they failed to count his ballot in the November 2016 Election. FAC ¶ 71.

### 2. Defendants Also Violated the Qualifications Clause.

As noted above, Plaintiff was, as a matter of law, eligible and qualified to vote for the Arizona House of Representatives in the November 2016 Election. Thus, Defendants also violated the fundamental purpose of the Qualifications Clause when they denied his right to vote for the U.S. Congress, despite the fact that he was "qualified to participate in the selection of members of the more numerous branch of the state legislature . . . ." *Tashjian*, 479 U.S. at 229.

### 3. The Right to Have a Ballot Counted is Not Mere Dicta.

Although this Court described the quoted language in *Classic* as "dicta," [Doc. 54 at 20 at n.9.], this is inaccurate. The Supreme Court's conclusion that Article I, Section 2 includes the right to have a ballot counted was essential to the Court's holding in *Classic*. One need not look beyond the first paragraph of the opinion to see that this was squarely the question before the Court:

> *The questions for decision are whether the right of qualified voters* to vote in the Louisiana primary and *to have their ballots counted is a right 'secured * * * by the Constitution'* within the meaning of ss 19 and 20 of the Criminal Code, and whether the acts of appellees charged in the indictment violate those sections.

*Classic*, 313 U.S. at 307 (emphasis added). Notably, this aspect of the holding was unanimous, as the three dissenters expressly indicated their agreement on this point. *See id*. at 331 (Douglas, J., dissenting) (noting that the dissenters agreed with "most of the views expressed in the opinion of the Court" including that "[t]he right to have one's vote counted" is protected by the U.S. Constitution). Regardless, even dicta from the Supreme Court warrants respect. *See Coeur D'Alene Tribe v. Hammond*, 384 F.3d 674, 683 (9th Cir. 2004) (stating that Supreme Court dicta is entitled to "great weight").

## IV. PLAINTIFF PLAUSIBLY ALLEGES A VIOLATION OF HAVA (SECOND CAUSE OF ACTION).

### A. Defendants Effectively Concede That The Decision Not to Count Plaintiff's Ballot Violated HAVA.

Defendants do not dispute that (1) "HAVA expressly precludes determinations [that are] inconsistent with the [NVRA]," FAC ¶ 62, or (2) that "[t]he October 10, 2016 Policy is a State requirement inconsistent with the NVRA," *id*. at ¶ 63. Rather, Defendants concede that 52 U.S.C. § 21084 precludes Arizona from enacting requirements that fall below HAVA's baseline requirements. [Doc. 57 at 4 ("States . . . may not go below [HAVA's baseline].").] Specifically, Defendants contend that "Congress . . . included the cross reference [to the NVRA] to ensure that the savings clause could not result in sanctioning a course of action by a state that failed to adhere to the NVRA or the other acts listed." [Doc. 61 at 3.] Yet, that is exactly what Defendants did here. They undertook a course of action that violated the NVRA.

Despite having a preview of Plaintiff's position, which was detailed in his Reply in Support of his Motion to Amend, Defendants again repeat their mistaken contention that the "baseline" established by HAVA is nothing more than "being able to cast a provisional ballot." [*Id*. at 4 (quoting *Sandusky*).] But HAVA requires that election officials also count provisional ballots they determine to have been cast by eligible voters, and crucially that such determinations be made in accordance with the NVRA. Section 21084 expressly precludes states from adopting requirements that are "inconsistent with the Federal requirements under this subchapter or any law described in section 21145 of this title," 52 U.S.C. § 21084, and Section 21145 describes the NVRA and five other federal statutes, *id*. at § 21145 (listing six federal statutes, including the NVRA). To adopt Defendants' interpretation would require this Court to read out the phrase "or any law described in section 21145 of this title." Such a reading would be contrary to its plain language and well-established canons of statutory interpretation.

*Hurlic v. S. California Gas Co.*, 539 F.3d 1024, 1032 (9th Cir. 2008) ("It is not within our province 'to read out of the statute the requirement of its words.'").

In the context of the overall statutory scheme, Defendants mistakenly characterizes Section 21084 as a mere "garden variety" savings clause. [Doc. 61 at 2–3.] Garden variety or not, the clause ensures that the statute will not be "construed to authorize or require conduct [the NVRA prohibits] or to supersede, restrict, or limit the [NVRA's] application . . . ." 52 U.S.C. § 21145(a); *see also Gonzalez v. Arizona*, 677 F.3d 383, 402 (9th Cir. 2012) (en banc) (referring to Section 21145 as "HAVA's savings clause" and finding that it "makes clear that Congress intended to preserve the NVRA except as to the specific changes it enacted in HAVA").

Given that Section 21145 sufficiently "saves" the relevant NVRA standards, adopting Defendants' interpretation of Section 21084 would render Section 21145 superfluous. *See Padash v. INS*, 358 F.3d 1161, 1170–71 (9th Cir. 2004) ("[W]e must make every effort not to interpret the provision at issue in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.") (internal quotation marks and adjustments omitted); *see also FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (noting the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme"). Rather, Congress's decision to reference the NVRA in Section 21084 evidences its intent to affirmatively incorporate the NVRA's requirements into HAVA's baseline requirements. *See Hassett v. Welch*, 303 U.S. 303, 314 (1938) ("Where one statute adopts the particular provisions of another by specific and descriptive reference to the statute or provisions adopted, the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute.") (internal quotation marks omitted).

Thus, contrary to Defendants' contention, Plaintiff's Second Cause of Action does not merely "dispute . . . the propriety of the Secretary's determination regarding his

eligibility to vote under Arizona state law." [Doc. 61 at 4 (citations and quotation marks omitted).] Rather, Plaintiff contends that Defendants' October 10, 2016 Policy violated HAVA's federal requirements, not just state law.

### B. HAVA Creates A Federal Right Enforceable Under Section 1983.

Defendants cursorily contend that HAVA is not enforceable under Section 1983 because it does not include a private right of enforcement. [Doc. 61 at 5.] Yet, as this Court recently noted in dismissing Plaintiff's NVRA claims, it is the *inclusion* of a private judicial remedy that sometimes suggests a Congressional intent to preclude Section 1983 enforcement. [*See* Doc. 54 at 11 (noting that the Supreme Court has emphasized the absence of a private judicial remedy when finding that § 1983 enforcement is available).]

In any event, courts have uniformly concluded that the HAVA provision at issue here—52 U.S.C. § 21082(a)(4) or HAVA § 302—is enforceable by § 1983. *See Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565, 573 (6th Cir. 2004) ("Individual enforcement of this right under § 1983 is not precluded by either the explicit language of HAVA, or by a comprehensive enforcement scheme incompatible with individual enforcement."); *Fla. Democratic Party v. Hood*, 342 F. Supp. 2d 1073, 1078 (N.D. Fla. 2004) ("[T]his statute clearly creates a federal right enforceable under § 1983."); *Bay Cty. Democratic Party v. Land*, 347 F. Supp. 2d 404, 427 (E.D. Mich. 2004) ("There is no indication in the text of HAVA that these mechanisms were meant to be exclusive.").

Defendants' reliance [Doc. 61 at 5] on the Third Circuit's error-laden opinion in *American Civil Rights Union v. Philadelphia City Commissioners* (*ACRU*), 872 F.3d 175, 184 (3d Cir. 2017), is misplaced. The Court in *ACRU* considered provisions of HAVA that did not contain the requisite rights-creating language. 872 F.3d at 184 (noting that plaintiffs alleged violations of two *regulatory* provisions of HAVA). And, "[t]he fact that many of HAVA's provisions—indeed, probably most of them—are crafted in

12

regulatory terms rather than in terms of voters' rights does not bar a conclusion that a particular provision confers an individual right." *Colon-Marrero v. Velez*, 813 F.3d 1, 16 (1st Cir. 2016) (concluding that Section 303(a)(4) of HAVA, which provides that States "shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly," is enforceable under § 1983).[5] Moreover, HAVA's incorporation of the NVRA's rights-creating language also evidences Congress's intent to create a right enforceable by § 1983. *See Day v. Apoliona*, 496 F.3d 1027, 1038 (9th Cir. 2007) ("Supreme Court precedent shows that statutory cross-references, references to established legal principles, and other devices that, when followed to their sources, supply a clear message, can suffice to create a right.") (holding that the Hawaii Admission Act can be enforced via §1983).

To the extent *ACRU* is apposite, it is wrongly decided and should be rejected. Specifically, the Third Circuit's reasoning that "the fact that the NVRA provides for a private right of action while the HAVA does not clearly indicates Congress's intent to limit HAVA's enforcement mechanism to preclude a private suit," *ACRU*, 872 F.3d at 185, turns the Supreme Court's § 1983 preclusion precedent on its head.

The Supreme Court has held that the *absence* of a private right of action supports a finding that § 1983 is available. *See City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 121 (2005) (noting that "in all of the cases in which we have held that § 1983 is available for violation of a federal statute, we have emphasized that the statute at issue, in contrast to those in *Sea Clammers* and *Smith*, did not provide a private judicial remedy (or, in most of the cases, even a private administrative remedy) for the rights violated."); *see also Carr v. Wilson-Coker*, 2006 WL 8447761, at *5 (D. Conn. Jan. 19, 2006) ("When such a remedy is not built in by Congress, however, and there is no explicit

---

[5] As noted in Plaintiffs' Reply in Support of his Motion to Amend, Defendants' conduct also violated Section 303(a)(4) because their decision to not include his name on the registration list was inconsistent with the NVRA.

provision foreclosing such a remedy, it is difficult indeed to make the showing that a section 1983 action would be inconsistent with Congress carefully tailored scheme.") (internal citations omitted). Thus, "[f]ar from indicating congressional intent to foreclose a private remedy under § 1983, [HAVA's] limited enforcement options reflect an intention to leave that door wide open." *Colon-Marrero*, 813 F.3d at 22.

Likewise, the Third Circuit's mischaracterization of the Ninth Circuit's opinion in *Crowley v. Nevada ex rel. Nevada Sec'y of State*, 678 F.3d 730 (9th Cir. 2012), only further undermines *ACRU*'s persuasive value. In a footnote, the *ACRU* court referenced the district court's conclusion that there was a circuit split regarding the use of § 1983 to enforce HAVA:

> *Am. Civil Rights Union*, 2016 WL 4721118, at *5 (comparing *Colon-Marrero v. Velez*, 813 F.3d 1, 13 (1st Cir. 2016) (recognizing there is no private right of action under the HAVA, but permitting a Section 1983 suit); *Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565, 572 (6th Cir. 2004) (same); with *Crowley v. Nevada ex rel. Nevada Sec'y of State*, 678 F.3d 730, 735 (9th Cir. 2012) (recognizing there is no private right of action under the HAVA, and foreclosing a Section 1983 suit)).

*ACRU*, 872 F.3d at n.57 185. Yet, the *ACRU* district court and, in turn the Third Circuit, misapprehend the holding in *Crowley*. The Ninth Circuit's decision did *not* conclude that HAVA foreclosed a § 1983 enforcement action. Rather, the Ninth Circuit limited its holding to the particular provision at issue, HAVA § 301 (regarding voting system standards), and found that the plaintiff could not bring a § 1983 action under HAVA because he was not a member of the class intended to benefit from the enactment of HAVA § 301:

> [W]e need not and do not ultimately address whether HAVA § 301 could ever be enforced via a § 1983 cause of action brought to challenge the recount procedures in an election for *federal* office [because the plaintiff] did not request a recount of an election for *federal* office. He contests only the recount method used in an election for *county* office . . . . Therefore, he cannot enforce violations of HAVA § 301 through a § 1983 cause of action.

*Crowley*, 678 F.3d 730, 735.

### C. The Election Clause Grants Congress Expansive Authority to Regulate Federal Elections.

Finally, Defendants argue that Plaintiff's claims would impermissibly alter "the balance of power vis a vis administration of elections." [Doc. 61 at 2.] But Article I, Section 4 of the Constitution confers on the states the authority to regulate federal elections, subject to "Congress's *expansive* Elections Clause power," *Gonzalez v. Arizona*, 677 F.3d 383, 403 (9th Cir. 2012) (en banc) (emphasis added), *aff'd sub nom. Arizona v. ITCA*, 570 U.S. 1, 8–9 (2013) (Scalia, J.) (holding that the Elections Clause "'embrace[s] authority to provide a complete code for congressional elections,' including ... regulations relating to 'registration.'") (quoting *Smiley v. Holm*, 285 U.S. 355, 366 (1932)). Thus, it is well within Congress's authority to regulate states' counting of provisional ballots, especially where, as here, a state's determinations concerning registration requirements are inconsistent with federal law. If the states were free to ignore the express federal limits on their authority, HAVA's mandatory language, requiring that ballots be counted, would be meaningless.

## V. THE COURT SHOULD ONLY CONSIDER ARGUMENTS RAISED IN DEFENDANTS' MOTION.

The Supreme Court has instructed district and appellate courts to only consider arguments properly raised by a party, barring exceptional circumstances:

> In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. To the extent courts have approved departures from the party presentation principle in criminal cases, the justification has usually been to protect a *pro se* litigant's rights. *See Castro v. United States*, 540 U.S. 375, 381–383 (2003). But as a general rule, "[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." *Id.*, at 386 (SCALIA, J., concurring in part and concurring in judgment).

*Greenlaw v. United States*, 554 U.S. 237, 243–44 (2008) (footnote omitted). As a result, this Court and the Ninth Circuit only consider arguments raised by the parties. *See, e.g.,*

*Willms v. Sanderson*, 723 F.3d 1094, 1099 (9th Cir. 2013) (reversing the lower court, in part, because "the court recommended a specific legal course of action for the [party] to pursue"); *United States v. IASIS Healthcare LLC*, 2016 WL 6610675, at *10 (D. Ariz. Nov. 9, 2016) ("The Court will not address arguments not raised by Relators or briefed by the parties"). This is also the case where an amicus raises a new argument. *See, e.g., Artichoke Joe's Cal. Grand Casino v. Norton*, 353 F.3d 712, 719 n.10 (9th Cir. 2003) ("In the absence of exceptional circumstances, which are not present here, we do not address issues raised only in an amicus brief.").

The rationale for the *Greenlaw* Rule applies equally to new arguments raised in reply briefs because the non-moving party is deprived an opportunity to respond. *See Driesen v. RSI Enterprises Inc.*, 2019 WL 283646, at *6 (D. Ariz. Jan. 22, 2019) (Lanza, J.) (citing *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.")); *see also AIRFX.com v. AirFX LLC*, 2012 WL 129804, *1 (D. Ariz. 2012) ("Defendant moves to strike plaintiffs' reply ..., arguing that the reply raises new arguments.... [A] motion to strike in this case is unnecessary, as we do not consider new arguments raised in a reply.").

Thus, this Court should adhere to the principle of party presentation, and should not consider arguments that were not raised by Defendants.

## V. CONCLUSION

For the foregoing reasons, the Defendants' Motion should be denied.

Respectfully Submitted this 22nd day of July, 2019.

By: *s/ Spencer G. Scharff*

Spencer G. Scharff
SCHARFF PLLC

&

Nathan Fidel
MILLER, PITT, FELDMAN & MCANALLY P.C.

*Attorneys for Plaintiff*

David Isabel

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2019, I electronically transmitted the above document to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*s/ Spencer G. Scharff*