# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Isabel, | No. CV-18-03217-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Michele Reagan, et al., | |
| Defendants. | |

## NOTICE OF TENTATIVE RULING

The hearing on Defendants' motion to dismiss (Doc. 61) is set for October 24, 2019. In advance of that hearing, the Court wishes to provide the parties with its tentative ruling.

This is, to be clear, only a tentative ruling. The point of providing it beforehand is to allow the parties to focus their argument on the issues that seem salient to the Court and to maximize their ability to address any perceived errors in the Court's logic. Additionally, because the tentative ruling identifies grounds for granting dismissal that were arguably not raised in Defendants' motion, the parties are invited to file an optional supplemental brief, not to exceed 10 pages, by no later than **October 15, 2019**.

Dated this 30th day of September, 2019.

_____
Dominic W. Lanza
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TENTATIVE RULING**

Pending before the Court is a motion to dismiss Plaintiff David Isabel's first amended complaint ("FAC"). (Doc. 65.) The motion was filed by Secretary of State Michelle Reagan and joined by Maricopa County and Maricopa County Recorder Adrian Fontes (collectively, "Defendants"). For the following reasons, the motion will be granted.

**BACKGROUND**

On October 9, 2018, Isabel filed the initial complaint in this case. (Doc. 1.) The facts alleged in that complaint, which the Court briefly recounts here, are as follows. Arizona's Secretary of State, Defendant Michele Reagan ("the Secretary"), established Monday, October 10, 2016 as the voter registration deadline for the 2016 general election ("the 2016 Election"). (*Id.* ¶ 19.) October 10 was also Columbus Day, a state and federal holiday, and therefore certain methods of registration weren't available on that day. (*Id.* ¶¶ 15-17.)

Isabel registered to vote on October 11, 2016. (*Id.* ¶ 24.) Because this was one day after the Secretary's voter registration deadline, Isabel was only permitted to cast a provisional ballot during the 2016 Election. (*Id.* ¶ 35.) Officials in the Maricopa County Recorder's Office ultimately determined that Isabel wasn't an eligible voter, due to his failure to register by the October 10 deadline, and thus didn't count his vote. (*Id.* ¶¶ 36-38.)

In the complaint, which Isabel filed on behalf of a class of similarly-situated individuals, Isabel alleged that Defendants violated two federal statutes—(1) the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20501 *et seq.*, and (2) the Help America Vote Act of 2002 ("HAVA"), 52 U.S.C. § 21081 *et seq.*—as well as Article I, Section 2 of the United States Constitution ("the Qualifications Clause"). (*Id.* ¶¶ 53-71.) All three claims were asserted via 42 U.S.C. § 1983. (*Id.* at 11-15.) As a remedy, Isabel sought "compensatory and punitive damages," among other things. (*Id.* at 15.)

On June 7, 2019, the Court dismissed all three claims without prejudice.[1] (Doc. 54.)

---

[1] The Court only dismissed the initial complaint against the Secretary because the County Defendants didn't move for dismissal on 12(b)(6) grounds. (Doc. 54 at 22 n.10.)

- 3 -

First, the Court dismissed the NVRA claim because the NVRA contains its own remedial scheme, which (unlike § 1983) authorizes only declaratory and injunctive relief, and Congress intended those limited remedies to be exclusive. (*Id.* at 9-14.) Second, the Court dismissed the HAVA claim because that statute only creates a federal right to cast a provision ballot and to have the ballot be counted "if the appropriate election official 'determines' that the individual is eligible"—it does not go further and create a federal right to challenge the propriety of state-law eligibility determinations. (*Id.* at 15-18.) Third, the Court dismissed the Qualifications Clause claim because that provision prohibits states from establishing different qualifications for voting for state and federal offices (and Isabel's ballot was treated equally—that is, disregarded—for all of the contested races in the 2016 Election) and because Isabel hadn't, in any event, alleged facts showing that the registration deadline "disenfranchised" him. (*Id.* at 18-22.)

On June 27, 2019, Isabel filed the FAC. (Doc. 60.) First, the FAC alleges that section 304 of the "HAVA expressly precludes [voter registration] determinations based on 'State requirements [that are] inconsistent with the [NVRA].'" (*Id.* ¶ 62.) The FAC contends that the October 10, 2016 voter registration deadline was inconsistent with the NVRA, and thus, Defendants violated the HAVA. (*Id.* ¶¶ 63, 64.) Second, the FAC no longer relies on the Qualifications Clause as the sole basis for Count III and instead argues Defendants violated Isabel's "Constitutionally protected right to vote" when they didn't count his provisional ballot. (*Id.* ¶¶ 69-73.)

On July 5, 2019, the Secretary moved to dismiss the FAC. (Doc. 61.) On July 8, 2019, the County Defendants joined this motion. (Doc. 63.)

The Court provided the parties with a tentative ruling on September 30, 2019, which afforded the parties with the opportunity to submit supplemental briefing. After the parties submitted their briefs, the Court held oral argument on October 24, 2019.

## DISCUSSION

I. <u>Legal Standard</u>

"[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

II. Analysis

    A. **The HAVA**

Isabel attempts to resuscitate his HAVA-based claim (Count II) by arguing that section 304 of the statute (which is codified at 52 U.S.C. § 21084) prohibits a state from making voter-eligibility determinations that are inconsistent with the NVRA, which Isabel contends occurred when Defendants refused to count his vote.

This argument is unavailing. The starting point for the analysis is, of course, the statutory text. Section 304 of the HAVA, which is entitled "Minimum requirements," provides as follows:

> The requirements established by this subchapter are minimum requirements and nothing in this subchapter shall be construed to prevent a State from establishing election technology and administration requirements that are more strict than the requirements established under this subchapter so long as such State requirements are not inconsistent with the Federal requirements under this subchapter or any law described in section 21145 of this title [which includes the NVRA].

52 U.S.C. § 21084.

This language does not, as Isabel contends, incorporate all of the NVRA's substantive requirements, such that a violation of the NVRA is automatically a violation of the HAVA. To the contrary, section 304 applies only when (1) the HAVA itself creates a particular type of regulation—a "technology and administration requirement[]"; (2) a state

- 5 -

chooses to create a competing "such" requirement that is "more strict" than the one created by the HAVA; and (3) the state's preferred, stricter version violates the NVRA (or another one of the cross-referenced statutes). But a voter registration deadline isn't an "election technology and administration requirement." Additionally, the HAVA doesn't purport to create minimum standards governing state voter registration deadlines, such that a state could then use "such" standards as a baseline when attempting to create a "more strict" version. *See, e.g., Florida State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1170 (11th Cir. 2008) ("HAVA section 302(a) describes general procedures for casting and reviewing provisional ballots; it does not impose any federal standards on voter registration or voter eligibility, both of which remain state decisions."); *Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565, 576 (6th Cir. 2004) ("HAVA is quintessentially about being able to cast a provisional ballot. No one should be 'turned away' from the polls, but the ultimate legality of the vote cast provisionally is generally a matter of state law."); *Ron Barber for Cong. v. Bennett*, 2014 WL 6694451, *8 (D. Ariz. 2014) ("HAVA does not contain language that requires that the provisional votes be counted; it is directed to providing provisional votes."). Section 304 is thus inapplicable here.

This conclusion is not only compelled by the plain language of the statute—which should end the analysis—but is also necessary to avoid absurd results. As noted in the order dismissing the earlier iteration of Isabel's complaint, "[t]he NVRA requires a party to give notice of a violation before bringing a civil action if the federal election is more than 30 days away" and "only allows declaratory and injunctive relief." (Doc. 54 at 16.) But Isabel's interpretation of section 304 would allow him to circumvent the limited remedies Congress chose to create for violations of the NVRA and ignores the "assumption . . . that limitations upon the remedy contained in the statute are deliberate." *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 124 (2005). It would be illogical to assume that Congress chose to jettison the carefully-calibrated remedial scheme contained in the NVRA (which doesn't authorize money damages) via a fleeting cross-reference to the NVRA in a "minimum requirements" provision of a different statute. *Cf. Whitman v. Am.*

1  *Trucking Associations*, 531 U.S. 457, 468 (2001) ("Congress, we have held, does not alter
2  the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it
3  does not, one might say, hide elephants in mouseholes.").

4  Finally, one additional reason why Isabel's claim may fail is that it's unclear
5  whether Congress intended for § 1983 to serve as a vehicle for asserting claims for money
6  damages premised on violations of section 304 of the HAVA. (This is an issue that the
7  Secretary didn't raise in her motion to dismiss the initial complaint but now raises in her
8  motion to dismiss the FAC, *see* Doc. 61 at 5.) Nevertheless, given the conclusions set forth
9  above—which provide alternative reasons for dismissing Count II of the FAC—the Court
10 need not resolve this issue here.

11      B.    **The Right To Vote**

12 The FAC frames Count III as a violation of "the right to vote," rather than merely a
13 Qualifications Clause violation. (Doc. 60 ¶¶ 67-73.) The FAC alleges the "right to vote"
14 includes "the right of qualified voters within a state to cast their ballots and have them
15 counted at Congressional elections." (*Id.* ¶ 69, citing *United States v. Classic*, 313 U.S.
16 299, 314-15 (1941).) The FAC further alleges that Isabel's right to vote was violated
17 "[b]ecause all of the provisional ballots described herein were cast by qualified voters
18 within the State of Arizona, [so] the U.S. Constitution required Defendants to count their
19 votes." (*Id.* ¶ 71.)

20 In support of the allegation that Isabel was, in fact, a qualified voter under Arizona
21 law, the FAC alleges that the voter registration deadline chosen by the Secretary fell on
22 Columbus Day, which is a "state and federal holiday." (Doc. 60 ¶¶ 15-16.) And in his
23 opposition to the motion to dismiss, Isabel identifies an Arizona state statute that provides
24 that "[w]hen anything of a secular nature . . . is provided or agreed to be done upon a day
25 . . . and the day . . . falls on a holiday, it may be performed on the next ensuing business
26 day with effect as though performed on the appointed day." *See* A.R.S. § 1-303. Based
27 on this statute, Isabel contends that "all registrations submitted on October 11, 2016 were,
28 as a matter of law, filed on October 10, 2016" and that the facts alleged in the FAC therefore

"[d]emonstrate that [Isabel] [w]as a [q]ualified Arizona [v]oter on November 8, 2016." (Doc. 65 at 4-5, citing A.R.S. § 1-303 and Ariz. Att. Gen. Op. No 58-74.)[2]

As an initial matter, the Court observes that the theory of disenfranchisement now being pursued by Isabel (*i.e.,* he was an eligible voter under Arizona law, because a state statute requires a one-day extension of all registration deadlines falling on holidays, yet Defendants failed to count his vote) is different than the theory that seemed to undergird the previous version of his complaint (*i.e.,* even though he missed the registration deadline by one day, the deadline was too early and thus effectively disenfranchised him). Although Isabel notes that the current theory "was clearly outlined in [his] previous filings" (Doc. 65 at 5 n.2), the Court didn't interpret the previous version of the complaint as pursuing an "I was actually eligible to vote under state law" claim. In any event, because Isabel was allowed to amend his complaint and the theory is now presented, any earlier misapprehension has been cured.

Defendants don't appear to fully comprehend or grapple with this refinement of Isabel's theory. In their motion to dismiss, Defendants argue that "[t]he issue of what [Isabel's] rights would be were he actually eligible to vote in the 2016 election are irrelevant because he was not eligible to vote. The registration deadline was October 10, 2016, and [Isabel] registered on October 11, 2016." (Doc. 61 at 6.) Notably, Defendants suggest that Isabel potentially may have been able to assert a § 1983 claim under *Classic* had he been eligible to vote under state law but argue his reliance on *Classic* is misplaced because he wasn't, in fact, eligible: "Even if this Court were to assume that *Classic* provides [Isabel] a basis for proceeding under Article I, Section 2 of the Constitution, it does not help [Isabel] in this instance because he was not a 'qualified voter' in the 2016 general election." (*Id.*) In their reply, Defendants repeat: "[Isabel] again tries some revisionist history by claiming that he was an eligible voter on November 8, 2016. He was

---

[2] It should be noted that the FAC doesn't cite A.R.S. § 1-303 or specifically allege that Isabel's registration attempt should have been considered timely under Arizona law because the deadline fell on a holiday. Instead, this theory is developed in the opposition to the motion to dismiss. Nevertheless, the FAC alleges the relevant facts on which the theory is premised.

- 8 -

not.  Just as in *Rosario* and *Barilla*, [Isabel's] voter registration was untimely with regard to the November 2016 general election."  (Doc. 66 at 4.)

Those arguments overlook Isabel's invocation of A.R.S. § 1-303.  Isabel contends that his registration attempt on October 11, 2016 should have, as a matter of Arizona law, been deemed to have occurred on October 10, 2016 (which was within the deadline set by the Secretary) and Defendants do not proffer any reasoned basis for questioning this outcome.[3]  Defendants also fail to meaningfully address Isabel's argument that, assuming he should have been considered eligible to vote under state law, the failure to count his vote amounted to a violation of the federal constitutional "right to vote" as recognized by *Classic*.

Isabel argues that, because Defendants failed to make the correct arguments concerning Count III in their motion to dismiss, the Court must deny the motion without considering whether Count III is flawed for other reasons.  (Doc. 65 at 15-16.)  This argument is unavailing.  As noted, Isabel's reliance on A.R.S. § 1-303 isn't apparent from the face of the FAC.  Thus, Defendants' failure to fully comprehend his theory of liability is understandable.  Moreover, the Ninth Circuit has recognized that "[a] trial court may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim" so long as the plaintiff is afforded "'an opportunity to at least submit a written memorandum in opposition to such motion.'"  *Wong v. Bell*, 642 F.2d 359, 361-62 (9th Cir. 1981) (citation omitted).  In the Court's view, it makes sense to get to the bottom of whether Claim III states a valid claim right now, particularly when the alternative is denying the motion to dismiss under a forfeiture theory, requiring the parties to slog through months of expensive discovery, and, only after discovery is complete, then

---

[3] Defendants' only fleeting attempt to address this issue is footnote 1 of their reply, which asks the Court to "take judicial notice of the fact that Maricopa County, where [Isabel] resides according to his [FAC], does not observe Columbus Day as a holiday." (Doc. 66 at 2 n.1.)  But A.R.S. § 1-301(A)(13) specifically recognizes Columbus Day as a holiday under Arizona state law and A.R.S. § 1-303 provides that whenever a deadline falls on a date that is considered a holiday under state law, acts taken on the following day must be deemed timely.  It is therefore unclear why Maricopa County's non-recognition of Columbus Day has any bearing on the issues here.

rejecting Count III due to a legal infirmity that has seemed apparent to the Court from the outset. *Cf.* Fed. R. Civ. P. 1 ("These rules . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

On the merits, the fundamental problem with Count III is that it attempts to transform a state-law violation into a federal constitutional claim. The FAC can be construed as alleging that, when Defendants determined Isabel wasn't eligible to vote in the 2016 Election after he registered on October 11, 2016, they failed to give effect to A.R.S. § 1-303. (Doc. 65 at 5 ["[E]ven if the October 10, 2016 'deadline' were not unlawful, Plaintiff has adequately alleged that, as a matter of law, he timely registered to vote in November 2016 Elections and was eligible and qualified to cast a ballot on November 8, 2016."].) This may be true,[4] but it doesn't follow that Isabel's rights under the Constitution were violated. *See, e.g., Pasiewicz v. Lake Cty. Forest Pres. Dist.*, 270 F.3d 520, 526 (7th Cir. 2001) ("A violation of a state statute is not a *per se* violation of the federal Constitution. The federal government is not the enforcer of state law."); *Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525, 1527 (11th Cir. 1987) ("[E]ven if the state statute has been violated, that does not prove a violation of a federal constitutional right.").

*Classic* is not to the contrary. Isabel argues that *Classic* recognized "the right of qualified voters within a state to cast their ballots and have them counted at Congressional elections." (Doc. 65 at 8, quoting *Classic*, 313 U.S. at 315.) But *Classic* arose in a much different context—there, individuals who were deemed qualified to vote under state law, and who cast ballots, had their ballots "willfully altered and falsely counted" by corrupt local election officials. *Id.* at 307. Specifically, "[t]he overt acts alleged were that the [officials] altered eighty-three ballots cast for one candidate and fourteen cast for another, marking and counting them as votes for a third candidate, and that they falsely certified the number of votes cast for the respective candidates to the chairman of the Second

---

[4] *See Dedolph v. McDermott*, 281 P.3d 484, 486 (Ariz. 2012) ("[I]f the [voting-related] deadline falls on [a holiday], a challenge filed on the next business day would be timely.") (citing A.R.S. § 1-303).

- 10 -

Congressional District Committee." *Id.* Based on these facts, the Supreme Court concluded the election officials could be prosecuted for violating federal criminal law. *Id.*

To be sure, *Classic* contains a number of passages that, when read in isolation, can be construed as suggesting that a federal constitutional violation occurs whenever a state election official fails to count a valid ballot. If this were the rule, then Count III of the FAC might survive dismissal. But the Court is not persuaded that this is, in fact, the rule. *Classic* was a criminal case involving outright ballot fraud and alteration. This is a civil case in which Isabel has identified a legal reason why his ballot should have been considered valid under state law despite his failure to register until one day after the ostensible registration deadline. If it were possible to sue state election officials for money damages under § 1983 under these circumstances, there would presumably be some precedent for doing so. Isabel, however, has tellingly failed to identify a single case in the 78 years since *Classic* was decided in which a court has endorsed such a theory in a § 1983 action.

The bottom line is that, although the Court is troubled by the notion that state election officials might disregard ballots that should have been considered valid under state law, Isabel has not identified any cognizable theory or vehicle for pursuing a money-damages claim against such officials under federal law. Congress declined to authorize such a remedy when enacting the NVRA, and again when enacting the HAVA, and Isabel hasn't pointed to any decisions—in the nearly eight decades since *Classic* was decided—holding that such a remedy is part and parcel of the "right to vote" enshrined by federal common law.

Finally, Isabel did not request leave to amend in his opposition to the motion to dismiss and it doesn't appear to the Court that further leave to amend would be necessary or appropriate.

Accordingly, **IT IS ORDERED** that:

(1) Defendants' motion to dismiss for failure to state a claim (Doc. 61) is **granted**; and

(2) The Clerk of Court shall terminate this action and enter judgment accordingly.