Spencer G. Scharff, No. 028946
SCHARFF PLLC
502 W. Roosevelt Street
Phoenix, AZ 85003
(602) 739-4417
spencer@scharffplc.com

Nathan Fidel, No. 025136
MILLER, PITT, FELDMAN & MCANALLY P.C.
2800 N. Central Ave, Suite 840
Phoenix, AZ 85004
(602) 266-5557
nfidel@mpfmlaw.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Isabel, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Michele Reagan, in her individual capacity; Maricopa County; Adrian Fontes, in his official capacity as Maricopa County Recorder,<br><br>Defendants. | No. 2:18-cv-03217<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DISMISSAL**<br><br>Hon. Dominic W. Lanza |

Pursuant to the Court's invitation [Doc. 71], Plaintiff David Isabel respectfully submits the following Supplemental Brief in support of his claims for relief in the Third Cause of Action of the First Amended Complaint ("FAC") [Doc. 60].

### I.  PLAINTIFF HAS SUFFICIENTLY ALLEGED A CLAIM FOR DAMAGES AGAINST DEFENDANTS.

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff need only show that: (1) he suffered a violation of rights protected by the Constitution or created by

federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). The first step in a § 1983 claim is therefore to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) ("The language of the statute shows this can be a direct or indirect deprivation.").

Here, Mr. Isabel registered to vote on October 11, 2016—the day after Columbus Day. His registration was timely for the November 2016 General Election under *both* state and federal law. In advance of the election, the Arizona Secretary of State was sued in this Court in order to ensure that voters like Mr. Isabel would be allowed to vote in the general election on a regular (i.e. non-provisional) ballot. This court ruled—five days before Election Day 2016—that registrations like Mr. Isabel's were timely but declined to grant the equitable relief requested.

The FAC plainly alleges that Defendants had notice of the November 3, 2016 ruling but chose to flout it by deeming invalid all provisional ballots cast by the October 11, 2016 Registrants. FAC ¶¶ 28–34. As a result, Defendants illegally refused to count Mr. Isabel's ballot. Mr. Isabel only learned in 2017 that his vote had not been counted. Defendants' conduct plainly violated Mr. Isabel's constitutionally protected voting rights.

Accordingly, Defendants' failure "to fully comprehend or grapple" with Mr. Isabel's claims, [Doc. 71 at 8], is not mere oversight. It is deliberate obfuscation. In fact, Defendant Reagan's 2018 Elections Procedures Manual cites to the November 3, 2016 order for the proposition that "the voter registration deadline must be moved closer to election day if closure of State or Federal offices would cause a method of registration to be unavailable within the 30-day period preceding the next election." FAC ¶ 32.

## II. THE FAC DOES NOT RELY ON A STATE-LAW VIOLATION.

The Court appears to agree that Defendants violated Plaintiff's right to vote but has tentatively ruled that this is a violation only of Plaintiff's rights under state law, noting Plaintiff's invocation of state law to explain that he was eligible to vote. If adopted, this ruling would misconstrue the complaint and the governing legal standards.

The constitutional right at issue in Plaintiff's Third Cause of Action is the right of qualified electors to vote in federal elections. *See* FAC ¶¶ 68–70. It is beyond dispute that this is a *fundamental* right expressly protected by the Constitution. *See, e.g., Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 665 (1966) ("[T]he right to vote in federal elections is conferred by Art. I, s 2, of the Constitution . . . ."); *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 821 (1995) ("Following the adoption of the Seventeenth Amendment in 1913, this ideal was extended to elections for the Senate."); *see also Republican Party of State of Conn. v. Tashjian*, 770 F.2d 265, 274 (2d Cir. 1985) (holding that the Seventeenth Amendment and the Article I, Section 2 provide "a substantive right of participation in representative democracy."), *aff'd sub nom. Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986).

The Supreme Court's holding in *United States v. Classic* is valid and binding precedent on this point—one of many. 313 U.S. 299 (1941). In *Classic*, the Supreme Court upheld indictments against election officials in a Louisiana primary based on violations of Sections 19 and 20 of the Criminal Code. Holding that the case turned on "whether the right of qualified voters to vote in the Louisiana primary and to have their ballots counted is a right 'secured … by the Constitution,'" *id*. at 307, the Court held that it was and found that the district court erred in sustaining a demurrer to the indictment.

In its Tentative Ruling, this Court suggests that *Classic* is inapposite because it involved corrupt local election officials who "willfully altered and falsely counted" ballots. However, as the FAC alleges, Defendants' conduct in this case was also willful. *See, e.g.*, FAC ¶ 72 ("Defendants, either by evil motive or intent, or through reckless,

1  callous, and deliberate indifference to Plaintiff's federally protected rights, violated
2  Plaintiff's right to vote . . . ."). This court made plain on November 3, 2016 that the
3  October 11, 2016 Registrants were eligible to vote, and Defendants flouted that ruling.
4  *See* FAC ¶¶ 30–31 (alleging that Defendants knew that they were *required* "to consider
5  any voter who registered on October 11, 2016, including Plaintiff Isabel, eligible to cast a
6  ballot in the November 2016 Election."). In other words, the Defendants refused to
7  follow the law and honor the class members' constitutionally protected rights because a
8  court did not expressly order them to do so.

9  Further, and more importantly, *Classic* did not turn on the criminality of the
10 defendants' conduct. Rather, the Court's decision turned on a question of statutory
11 construction. The federal statutes in question—then codified at 18 U.S.C. §§ 51, 52—
12 made it a crime to "injure a citizen in the exercise of any right or privilege secured to him
13 by the Constitution or laws of the United States," or "acting under color of any law …
14 depriv[e any inhabitant of any State] of any rights, privileges, or immunities secured or
15 protected by the Constitution and laws of the United States." *Classic*, 313 U.S. at 309–
16 10. These criminal offenses are now codified at 18 U.S.C. § 242 and have been
17 repeatedly dubbed Section 1983's "criminal counterpart" by the Supreme Court. *See,
18 e.g., Daniels v. Williams*, 474 U.S. 327, 329–30 (1986) ("After examining the language,
19 legislative history, and prior interpretations of the statute, we concluded that § 1983,
20 unlike its criminal counterpart, 18 U.S.C. § 242, contains no state-of-mind requirement
21 independent of that necessary to state a violation of the underlying constitutional right.").

22 Notably, the Supreme Court's constitutional analysis in *Classic* expressly turned
23 on its interpretation of the *state* statutes governing the primary election at issue:

> We look then to the statutes of Louisiana here involved to ascertain the nature of the right which under the constitutional mandate they define and confer on the voter and the effect upon its exercise of the acts with which appellees are charged, all with the view to determining, first, whether the right or privilege is one secured by the Constitution of the United States, second, whether the effect under the state statute of appellee's alleged acts

>   is such that they operate to injure or oppress citizens in the exercise of that right within the meaning of s 19 and to deprive inhabitants of the state of that right within the meaning of s 20, and finally, whether ss 19 and 20 respectively are in other respects applicable to the alleged acts of appellees.

313 U.S. at 310–11.  In doing so, the Court expressly addressed the constitutional interplay between state and federal law governing elections:

>   While, in a loose sense, the right to vote for representatives in Congress is sometimes spoken of as a right derived from the states, this statement is true only in the sense that the states are authorized by the Constitution, to legislate on the subject as provided by s 2 of Art. I, to the extent that Congress has not restricted state action by the exercise of its powers to regulate elections under s 4 and its more general power under Article I, s 8, clause 18 of the Constitution "To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers."

*Id*. at 315 (internal citations omitted).  Reasoning that the right to vote in the Louisiana primary was a right secured by the Constitution, the Supreme Court reversed the district court's demurrer as to the indictments under these statutes.

That rationale applies with even greater force here, where Mr. Isabel was deprived of his right to have his ballot counted in a *general election*, not a primary.  In *Classic*, the Court held that the right to vote in a primary was secured by Article I, Section 2 precisely because it was "as a matter of law and in fact" instrumental in the choosing of members of the House of Representatives.  *Id.* at 314.[1]  There can be no argument that Mr. Isabel's right to vote in a general election is at least equally protected by the same clause. Moreover, the Court in *Classic* was interpreting a criminal statute, where rules of leniency apply to narrow the scope of the statute.  Its rationale applies *a fortiori* to the civil relief requested by Mr. Isabel.

Given that Plaintiff has alleged all of the facts necessary to establish that he was a qualified voter, the Court must accept such allegations as true at the pleading stage. Plaintiff only cited to A.R.S. § 1-303 in his Opposition to Defendants' Motion to

---

[1]   There was not a U.S. Senate race on the ballot because 1940 was an off year for Louisiana's United States Senate "Class."

Dismiss, because Defendants asserted that Plaintiff "was not eligible to vote." [Doc. at 61 at 6.]  In any event, at the pleading stage, such an unsupported assertion by Defendants cannot negate the facts alleged.  *See, e.g.*, *Carlson v. Northrop Grumman Corp.*, 196 F. Supp. 3d 830, 836–37 (N.D. Ill. 2016) ("Since competing factual allegations and any reasonable inferences drawn from them must be resolved in favor of the nonmoving party at the pleading stage, Defendants' factual assertions do not provide a proper basis to dismiss the complaint for failure to state a claim.").

### A. The Supreme Court Has Long Held that a Violation of Federal Constitutional Rights Can Occur Concurrently with a Violation of State Law.

In 1961, the Supreme Court determined in *Monroe v. Pape*, 365 U.S. 167 (1961), that § 1983 provides a remedy for the violation of federal constitutional rights even if the contested conduct violates state law and gives rise to a claim for relief under state law. *Monroe* made clear that the federal § 1983 remedy is independent of and "supplementary to" any available state law remedies.  *Id*. at 183.  In fact, "[t]he very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights--to protect the people from unconstitutional action under color of state law," *Mitchum v. Foster*, 407 U.S. 225, 242 (1972).  Thus, the fact that Defendants' conduct also violated state law does not preclude Plaintiff's right to seek relief for Defendants' constitutional violations.

### B. Regardless, the Supreme Court Has Counseled Courts to Consider State Law in Connection with Certain Constitutionally Protected Rights.

Although the interpretation of constitutional provisions alleged to be the source of rights enforceable under § 1983 present questions of federal law, at times the interpretation of constitutional law requires reference to state law sources.  For example, courts must consider state law when resolving certain violations of the Takings Clause.  *See, e.g., Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) (whether a § 1983 claimant

has a property interest protected by the due process clause is determined by reference to state law. Property interests "are created and . . . defined by existing rules or understandings that stem from an independent source such as state law."). Moreover, state law can create constitutionally protected liberty interests. *See, e.g., Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979) (state law created liberty interest in parole); *Hicks v. Oklahoma*, 447 U.S. 343, 347 (1980) (state's failure to honor state law requiring discretionary jury sentencing violated due process). The Supreme Court has also held that whether a particular official has final policymaking authority for § 1983 purposes is question of state law. *See McMillian v. Monroe County*, 520 U.S. 781, 786 (1997). Perhaps most notably, as discussed above, the Court in *Classic* "look[ed] to the statutes of Louisiana" to determine whether the primary election was an "integral part" of the procedure for choosing representatives in Congress.

### C. Section 1983 Established Money-Damages Claims as "Part and Parcel" with the Violation of Constitutional Rights.

Courts have consistently upheld the right to seek compensatory damages for the violation of the right to vote. In fact, there was a period of time where the "the use of section 1983 was for the most part confined to deprivations of voting rights." Note, *The Background of Section 1983*, 90 HARV. L. REV. 1137, 1167 (1977). For example, in a 1927 opinion authored by Justice Oliver Wendall Holmes, Jr., the Supreme Court held that the right to seek damages for deprivations of the right to vote had been established for over 200 years:

> That private damage may be caused by such political action and may be recovered for in suit at law hardly has been doubted for over two hundred years, since *Ashby v. White*, 2 Ld. Raym. 938, 3 Ld. Raym. 320, and has been recognized by this Court. *Wiley v. Sinkler*, 179 U. S. 58, 64, 65, 21 S. Ct. 17, 45 L. Ed. 84; *Giles v. Harris*, 189 U. S. 475, 485, 23 S. Ct. 639, 47 L. Ed. 909. *See also* Judicial Code, s 24(11), (12), (14); Act of March 3, 1911, c. 231; 36 Stat. 1087, 1092 (Comp. St. s 991). If the defendants' conduct was a wrong to the plaintiff the same reasons that allow a recovery

for denying the plaintiff a vote at a final election allow it for denying a vote at the primary election that may determine the final result.

*Nixon v. Herndon*, 273 U.S. 536, 540 (1927); *see also Taylor v. Howe*, 225 F.3d 993, 1012 (8th Cir. 2000) ("[P]ersons whose right to vote was denied altogether should be entitled to more than nominal damages."); *Wayne v. Venable*, 260 F. 64, 65 (8th Cir. 1919) (affirming an award of damages where plaintiffs established that they were prevented "from casting their votes [] for presidential electors, United States Senator, and a member of Congress at the general election in that township on November 7, 1916, when and where presidential electors, a United States Senator, and a member of Congress were to be voted for and elected").[2]

To the extent the Court believes that there's a difference between denying a qualified voter access to a ballot and invalidating a qualified voter's submitted ballot, the Court is mistaken. The Supreme Court has long held that the constitutional right to vote protects a qualified voter's right to have his ballot counted. *United States v. Mosley*, 238 U.S. 383, 386 (1915) ("We regard it as equally unquestionable that the right to have one's vote counted is as open to protection by Congress as the right to put a ballot in a box.").

In sum, Plaintiff has sufficiently alleged a cognizable legal theory *and* a vehicle for pursuing a money-damages claim against Defendants under federal law.

## III.   CONCLUSION

The Plaintiff was a qualified voter on November 8, 2016—whether measured by state or federal law. As such, he is entitled to maintain a cause of action under 42 U.S.C. § 1983 for compensatory damages against the Defendants for the deprivation of his fundamental constitutional right to vote.

---

[2]   Notably, the Eighth Circuit in *Wayne* relied on certain Arkansas election statutes to establish that the plaintiffs' were qualified voters and unlawfully prevented from entering the polling location and casting a ballot. *See id*. at 68 ("The Statutes of Arkansas . . . provided: 'The polls shall be opened at eight o'clock a.m. and shall remain continuously opened until half-past six o'clock p.m.' The polls were not opened for voting until about 9:30 a.m., and a recess was taken for lunch.").

DATED this 15th day of October, 2019

> *s/ Spencer G. Scharff*
> Spencer G. Scharff
> SCHARFF PLLC
>
> &
>
> Nathan Fidel
> MILLER, PITT, FELDMAN & MCANALLY
> P.C.
>
> *Attorneys for Plaintiff David Isabel*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2019, I electronically transmitted the above document to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*s/ Spencer G. Scharff*